GARFIELD, SECRETARY OF THE INTERIOR, *v.* UNITED STATES *ex rel.* GOLDSBY.

ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 248.   Argued October 15, 18, 1908.—Decided November 30, 1908.

While acts of public officials which require the exercise of discretion may not be subject to review in the courts, if such acts are purely ministerial or are undertaken without authority the courts have jurisdiction, and mandamus is the proper remedy.

There is no place in our constitutional system for the exercise of arbitrary power, and the courts have power to restore the status of parties aggrieved by the unwarranted action of a public official.

One who has acquired rights by an administrative or judicial proceeding cannot be deprived of them without notice and opportunity to be heard; such deprivation would be without due process of law.

After the Secretary of the Interior has approved a list containing the name of a person found by the Dawes Commission to be entitled to enrollment for distribution he cannot, without giving that person

notice and opportunity to be heard, strike his name from the list. It would not be due process of law.

30 App. D. C. 177, affirmed.

THE facts are stated in the opinion.

The Attorney General and Mr. Assistant Attorney General Fowler, with whom Mr. William R. Harr was on the brief, for plaintiff in error:

The matters referred to in the petition are within the exclusive jurisdiction of the Secretary of the Interior and not subject to judicial review.

The matters referred to in the petition relate to the allotment of land and distribution of the property of the Chickasaw Nation, one of the Five Civilized Tribes in the Indian Territory. As to this there can be no question. Enrollment is merely an incident of the allotment scheme.

The allotment and distribution of the tribal lands and other tribal property of the Chickasaw Nation is a political matter and within the exclusive jurisdiction of Congress, except as it has otherwise provided. The agencies which Congress chose to execute this work were the Commission to the Five Civilized Tribes, which it especially created for the purpose, and the Secretary of the Interior. Act of March 3, 1905, 33 Stat. 1048–1050.

No court has jurisdiction, unless authorized by Congress, and Congress has expressly refrained from conferring any jurisdiction upon the courts in that regard, although at the same time it has conferred certain jurisdiction upon the Circuit Courts of the United States in respect to allotments elsewhere. Indian appropriation act of August 15, 1894, 28 Stat. 286, 305, as amended by the act of February 6, 1901, 31 Stat. 760; McKay v. Kalyton, 204 U. S. 458, 468; Hy-yu-tse-mil-kin v. Smith, 194 U. S. 413; The Rickert Case, 188 U. S. 432.

The political character of the legislation of Congress with respect to the allotment and distribution of the property of

the Indian tribes, its plenary authority with respect thereto, and its freedom from judicial control in that regard, have been frequently maintained by the Supreme Court. *Stephens* v. *Cherokee Nation*, 174 U. S. 445; *Cherokee Nation* v. *Hitchcock*, 187 U. S. 294; *Lone Wolf* v. *Hitchcock*, 187 U. S. 553.

Even if respondent's predecessor may have acted hastily or illadvisedly, this would not be a sufficient reason to give the courts jurisdiction. *Blackfeather* v. *United States*, 190 U. S. 373.

The legal title to the lands claimed by the relator being still in the United States and the Choctaw and Chickasaw Nations, the lower court should have declined to interfere.

The approval of the Secretary of the Interior of allotments is required by §§ 11, 12 of the act of June 28, 1898, 30 Stat. 495. These provisions, not being inconsistent with the act of July 1, 1902, 32 Stat. 641, are still in force. See par. 68 of the latter act. Under the practice in these matters the Secretary's approval of an allotment is given when he approves the patent therefor. In an opinion rendered May 22, 1905, 25 Opin. A. G. 460, the Attorney General held that the approval of the Secretary of the Interior of patents for allotments in the Choctaw and Chickasaw Nations was necessary in order to transfer the interest of the United States. *Brown* v. *Hitchcock*, 173 U. S. 473, 476; *United States* v. *Schurz*, 102 U. S. 378, 396; *Humbird* v. *Avery*, 195 U. S. 480, 505; *United States* v. *Detroit Lumber Co.*, 200 U. S. 321, 337, 338; *Love* v. *Flahive*, 205 U. S. 195, 198.

The Secretary of the Interior is given exclusive jurisdiction of all matters relating to the allotment of land. Par. 24, act of July 1, 1902, 32 Stat. 641. This declaration immediately follows the statement in the preceding paragraph that allotment certificates issued by the Commission to the Five Civilized Tribes shall be conclusive evidence of the right of any allottee to the tract of land described therein.

The power of the Land Department to cancel the final receiver's certificate has been often adjudged. *Orchard* v.

*Alexander,* 157 U. S. 372; *Parsons* v. *Venzke,* 164 U. S. 89; *Thayer* v. *Spratt,* 189 U. S. 346; *Hawley* v. *Diller,* 178 U. S. 476.

The courts will not interfere, by injunction or mandamus, with the action of executive officers requiring the exercise of judgment and discretion. *Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 324.

Whether a patent shall issue is certainly a matter involving the exercise of judgment and discretion. Mandamus will not lie to compel its issuing. *United States* v. *Commissioner,* 5 Wall. 563; *Secretary* v. *McGarrahan,* 9 Wall. 298.

The utmost the courts have ever done is to compel the delivery of a patent where it has been recorded and the title has passed. *United States* v. *Schurz,* 102 U. S. 378.

The Secretary of the Interior, in the light of the provisions of the statutes relating to these allotments, felt himself authorized to correct any mistakes that might have been made in the approved lists of members of such tribes prior to the time fixed for the completion of the same.

The matter before the court is not affected by the question of vested rights. If by reason of the selection of land made to him the relator has acquired any vested rights therein, as he alleges, he can assert them in the proper court after the title to the land has passed from the United States and the Chickasaw Nation. But that the mere expectation of a share in the property of the nation arising from the fact of his once having been enrolled does not create a vested right therein is settled by the decisions of the Supreme Court. *Stephens* v. *Cherokee Nation,* 174 U. S. 445; *Cherokee Nation* v. *Hitchcock,* 187 U. S. 294; *Lone Wolf* v. *Hitchcock,* 187 U. S. 553; *Morris* v. *Hitchcock,* 194 U. S. 384; *Wallace* v. *Adams,* 204 U. S. 415.

*Mr. Charles H. Merillat,* with whom *Mr. Charles J. Kappler* and *Mr. James K. Jones* were on the brief, for defendants in error:

The Secretary of the Interior neither by express grant nor

necessary implication was given authority to strike names from final approved rolls. His jurisdiction ceased with approval of final rolls.

The Secretary of the Interior, having been invested with authority to approve the rolls, his approval, whether right or wrong, is not open for review here. *Steel* v. *St. Louis Smelting Co.,* 106 U. S. 228; *Johnson* v. *Towsley,* 13 Wall. 83.

Having approved the final rolls, the Secretary had exhausted his discretion. His approval of enrollment ended authority in him. *United States* v. *McDaniel,* 7 Peters, 1, 14; *United States* v. *Thurber,* 28 Fed. Rep. 56; *Mosgrove* v. *Harper,* 33 Oregon, 252.

Once declared to be citizens, by operation of law defendants in error became entitled absolutely and of right to a vested interest in tribal lands and funds.

Congress has conferred no power upon the Secretary of the Interior to cancel an allotment certificate. The right to cancel an allotment is a very different thing from the right to cancel a receiver's certificate, and even a receiver's certificate carries with it property rights which may not be lightly set aside by the Secretary. *Orchard* v. *Alexander,* 157 U. S. 372; *Brown* v. *Gurney,* 201 U. S. 192.

The allotment certificates, like certification of lists of lands under these special acts, convey a title as complete as patents. See *Frasher* v. *O'Connor,* 115 U. S. 102; *Noble* v. *Union River Logging Co.,* 147 U. S. 165; *Stark* v. *Starr,* 6 Wall. 402; *Barney* v. *Dolph,* 97 U. S. 652.

Patent to the public lands, it has been held, is but evidence of the right and title thereto of the patentee. The patent being but evidence, relates back to the inception of the equitable right. *Detroit Lumber Co.* v. *United States,* 200 U. S. 335. The allotment certificate by statute is not the equitable right, but the "conclusive evidence" of the right of the allottee. Sec. 23, Choctaw-Chickasaw agreement of July 1, 1902. Enrollment gave a vested right to an undivided share, and the allotment certificate was the conclusive evidence of the right

to a particular segregated tract, and the patent but a more formal and recorded muniment of title. *Wallace* v. *Adams*, 143 Fed. Rep. 716; *Garfield* v. *Frost*, 30 App. D. C. 165.

Even were jurisdiction to cancel names on the final approved rolls conceded, notice and opportunity of hearing in defense are absolute prerequisites to its exercise. *United States* v. *Detroit Lumber Co.*, 200 U. S. 335; *People ex rel. Van Petten* v. *Cobb*, 13 App. Div. N. Y. Reps. 56; *Orchard* v. *Alexander*, 157 U. S. 382; *Atl. Del. Co.* v. *James*, 94 U. S. 207; *Conner* v. *Groh*, 90 Maryland, 686.

While mandamus will not lie to control the discretion of an executive officer or other tribunal, it is the appropriate remedy where the officer charged with a public duty exceeds his jurisdiction, or where, having exercised his discretion, he has exhausted his jurisdiction and subsequently attempts notwithstanding to exceed and abuse his discretion and authority.

The enrollment of defendants in error exhausted judgment, discretion and controversy. *Linn* v. *Belcher*, 24 How. 526; *Steel* v. *St. Louis Smelting Co.*, 106 U. S. 228; *Johnson* v. *Towsley*, 13 Wall. 83; *Noble* v. *Union River Logging Co.*, 147 U. S. 170; *Ex parte Virginia*, 100 U. S. 338; *Ex parte Roberts*, 15 Wall. 385; *People ex rel. Burroughs* v. *Brinkerhoff*, 68 N. Y. 262; *Wise* v. *Biggar*, 79 Virginia, 269; *Crane* v. *Barry*, 47 Georgia, 476; *Raymond* v. *Villere*, 42 La. Ann. 490; *State* v. *Mitchell*, 31 Ohio St. 592; *State ex rel. Brickman* v. *Wilson*, 123 Alabama, 259. See also *Romero* v. *Cortelyou*, 26 App. D. C. 298; *West* v. *Hitchcock*, 19 App. D. C. 333; *Union Pacific R. R.* v. *Hall*, 91 U. S. 343–353; *Illinois Central R. R.* v. *Illinois*, 163 U. S. 142; *Boston T. Co.* v. *Pomfret*, 20 Connecticut, 590; *Schmulbach* v. *Speidel*, 50 W. Va. 553; *Baltimore Univ.* v. *Colton*, 98 Maryland, 623; *Harwood* v. *Marshall*, 9 Maryland, 83; *Jackson* v. *State*, 57 Nebraska, 183; *Dawson* v. *Thurston*, 3 Hen. and M. (Va.) 132; *In re Strong*, 20 Pickering (Mass.), 484; *Puford* v. *Fire Dept.*, 31 Michigan, 000.

The courts have jurisdiction in the premises, inasmuch as the Secretary's discretion had been exhausted. *Foltz* v *St.*

*Louis R. R.,* 19 U. S. App. 581; *Cooper* v. *Reynolds,* 10 Wall. 308; *McLeod* v. *Receveur,* 71 Fed. Rep. 455; *Romero* v. *Cortelyou,* 26 App. D. C. 298.

MR. JUSTICE DAY delivered the opinion of the court.

This action was brought in the Supreme Court of the District of Columbia for a writ of mandamus against the Secretary of the Interior in his official capacity, to require him to erase certain marks and notations theretofore made by his predecessor in office upon the rolls, striking therefrom the name of the relator Goldsby as an approved member of the Chickasaw Nation, and to restore him to enrollment as a member of the nation.

Goldsby, in his petition, claimed that he was a recognized citizen of the Chickasaw Nation and entitled to an equal undivided interest in the lands of the Choctaw and Chickasaw Nations; that he was an owner of an allotment of land which had been made to him as hereinafter stated, and that he was entitled to an equal undivided distributive share of the funds and other lands of the nation. The petition for the writ recites at length the acts of Congress supposed to bear upon the subject, and avers that the Secretary of the Interior on October 6, 1905, affirmed a decision of the Commission to the Five Civilized Tribes, holding that the petitioner and his children were entitled to enrollment, and that relator's name was placed on the final roll of citizenship by blood of the Chickasaw Nation, and that the list was approved by the Secretary of the Interior on November 27, 1905, and that thereafter the petitioner secured an allotment of 320 acres of the allotable lands of the Chickasaw Nation, and an allotment certificate was issued to him by the Commission to the Five Civilized Tribes for the lands thus selected, and the same are now held by him. The petition then goes on to aver, in substance, that relator's name was stricken from the rolls on March 4, 1907. And it is averred that this action was unau-

thorized, was beyond the power of the Secretary, and deprived the relator of valuable rights in the lands and funds of the Choctaw and Chickasaw Nations without due process of law.

The Supreme Court of the District of Columbia issued an order to show cause and the Secretary appeared and answered. The answer, we think, may be fairly construed to contain a denial of the allegation, if the petition might be construed to make the claim, that the relator was an enrolled member of the Chickasaw Nation, but it does admit that he had been enrolled by the Commission to the Five Civilized Tribes; that the list had been approved by the First Assistant Secretary of the Interior, and averred that before the time fixed by Congress for the completion of the rolls of members of the nation the then Secretary of the Interior had disapproved the enrollment of the petitioner and stricken his name from the rolls. The answer admits that the certificate of allotment had been issued to petitioner by the Commission to the Five Civilized Tribes for lands selected by petitioner; and further avers that the Secretary of the Interior had not approved of such allotment, and no patent had been issued therefor.

The answer also admits that it had been the practice of Secretaries of the Interior to give notice before striking names from the approved lists of the Five Civilized Tribes, and avers that owing to the limited time before the expiration of the time fixed by Congress for the completion of the rolls, March 4, 1907, it was impossible to give notice and opportunity to be heard to relator and a large number of other persons. The answer avers that the respondent's predecessor, the then Secretary of the Interior, had no jurisdiction or authority to enroll the petitioner. It also avers that the allotment of lands in severalty of the Chickasaw Nation was delegated exclusively to the Secretary of the Interior. That by the acts of Congress exclusive jurisdiction in matters involving the making of rolls of citizenship of the Five Civilized Tribes was conferred

upon the Secretary of the Interior, and the determination of such matters was within his exclusive judgment and discretion.

A general demurrer was filed to the answer with a note thereto stating that one matter to be argued on demurrer is that the answer sets forth no sufficient reason in law for the cancellation of relator's enrollment by the Secretary of the Interior without notice or hearing. In the Supreme Court of the District of Columbia the demurrer to the answer was sustained upon that ground. The respondent elected to stand upon his answer. Judgment was entered requiring the Secretary to erase from the rolls the statements placed thereon derogatory to the relator's rights in said tribe, and to recognize relator as an enrolled member of the nation. Upon appeal to the Court of Appeals of the District of Columbia this judgment was affirmed (30 App. D. C. 177), and the case comes here.

While it does not appear from the allegations and admissions of the pleadings that Goldsby was an original enrolled member of the tribe, it does appear that under the act of Congress of June 10, 1896, c. 398, 29 Stat. 339, Goldsby made application to the Dawes Commission and was enrolled as a member of the Chickasaw Nation. It appears from a letter of the Secretary of the Interior to the commission, attached as an exhibit to the petition, and dated October 6, 1905, that the Commission to the Five Civilized Tribes, on May 24, 1905, following instructions of the department of April 2, 1905, and in accordance with the opinion of the Assistant Attorney General of March 24, 1905, in the case of *Vaughn et al.*, rescinded its action of September 23, 1904, dismissing the application for the enrollment of Goldsby and his minor children, and held that they should be enrolled as citizens, by blood, of the Cherokee Nation, and that on July 7, 1905, the Indian Office recommended that the commission's decision be approved. The Secretary's letter of October 6, 1905, concluded with a finding that the applicants, including Goldsby, should be enrolled as citizens of the Chickasaw Nation, affirming the commission's

decision. The Secretary of the Interior, on April 26, 1906, reported his approval to the Dawes Commission, the roll as approved was kept in the Secretary's office, and copies sent out as the statute required.

Goldsby selected his land and received a certificate of allotment from the commission, but no patent has been issued for the same. On March 4, 1907, the Secretary of the Interior without notice to the relator and without his knowledge, erased his name from the rolls and opposite the same caused the entry to be made, "canceled March 4, 1907."

In the view which we take of this case it is unnecessary to recite at length the numerous acts of Congress which have been passed in aid of the purpose of Congress to extinguish the tribal titles to Indian lands and to allot the same among the members thereof with a view of creating a State or States which should embrace these lands.

The act of June 10, 1896, c. 398, 29 Stat. 339, empowered the Dawes Commission to hear and determine applications for citizenship, and gave an appeal to the United States court in the Indian Territory from the decisions of the commission; made the judgment of that court final, and required the commission to complete its roll of citizens of the several tribes, and to include therein the names of citizens, in accordance with the requirements of the act. And the commission was required to file the list of members as they finally approved them, with the Commissioner of Indian Affairs.

The act of June 28, 1898, c. 517, 30 Stat. 497, § 11, made provision that when the roll of citizenship of any one of the nations or tribes is complete, as provided by law, and a survey of the land is made, the Dawes Commission should proceed to allot the lands among the citizens thereof, as shown by the roll.

By the act of March 3, 1901, c. 832, 31 Stat. 1077, it was provided that the rolls made by the Commission to the Five Civilized Tribes, as approved by the Secretary of the Interior, should be final, and authorized the Secretary of the Interior to fix the time by agreement with the tribes for the closing

of the roll, and upon failure of such agreement then the Secretary of the Interior should fix the time for the closing of the rolls, and after which no name should be added thereto.

The act of July 1, 1902, c. 1362, 32 Stat. 641, ratifies an agreement with the Choctaw and Chickasaw Nations, providing for the allotment of lands, and provides in § 23:

"23. Allotment certificates issued by the Commission to the Five Civilized Tribes shall be conclusive evidence of the right of any allottee to the tract of land described therein; and the United States Indian agent at the Union Agency shall, upon the application of the allottee, place him in possession of his allotment, and shall remove therefrom all persons objectionable to such allottee, and the acts of the Indian agent hereunder shall not be controlled by the writ or process of any court."

Section 31 of the act made provision for the establishment of a citizenship court. The provisions of the act, in this respect, are fully reviewed in former decisions of this court. *Wallace* v. *Adams*, 204 U. S. 415.

It is sufficient to say that by the act of July 1, 1902, a suit was authorized in the citizenship court to annul the citizenship decrees made in the United States court in the Indian Territory, under the act of June 10, 1896; provision was made for general suits in which a nation might be represented by ten representative defendants, and it was provided that when citizenship judgments in the court of the Indian Territory were annulled in the authorized test suit, the party aggrieved, by being deprived of favorable judgment upon his claim of citizenship, might himself appeal to the citizenship court, and such proceeding should be had as ought to have been had in the court to which the same was taken from the commission as if no judgment or decision had been rendered therein. And it was further provided that no person whose name did not appear upon the rolls, as provided for in this act, should be entitled to participate in the common property of the Choctaw and Chickasaw tribes.

The act of April 26, 1906, c. 1876, 34 Stat. 137, provided that the rolls of the tribes should be fully complete on or before the fourth day of March, 1907, and after that day the Secretary of the Interior should have no jurisdiction to approve the enrollment of any person.

It is insisted by the learned counsel for the Government that the court had no jurisdiction to entertain this suit, because the legal title has not as yet passed from the Government, as no patent has passed. We have no disposition to question those cases in which this court has held that the courts may not interfere with the Land Department in the administration of the public lands while the same are subject to disposition under acts of Congress entrusting such matters to that branch of the Government. Some of these cases are cited in the late case of *United States* v. *Detroit Lumber Company*, 200 U. S. 321, and the principle to be gathered from them is, that while the land is under the control of the Land Department prior to the issue of patent, the court will not interfere with such departmental administration. This was held as late as the case of *Love* v. *Flahive*, 205 U. S. 195, 198.

But the question presented for adjudication here does not involve the control of any matter committed to the Land Department for investigation and determination. The contention of the relator is, that as the Secretary had exercised the authority conferred upon him and placed his name upon the rolls, and the same had been certified to the commission, and he had received an allotment certificate, and was in possession of the lands, the action of the Secretary in striking him from the roll was wholly unwarranted, and not within the authority and control over public land titles given to the Interior Department.

By the conceded action of the Secretary prior to the striking of Goldsby's name from the rolls he had not only become entitled to participate in the distribution of the funds of the nation, but by the express terms of § 23 of the act of July 1, 1902, c. 1362, 32 Stat. 641, it was provided that the certificate

should be conclusive evidence of the right of the allottee to the tract of land described therein. We have therefore under consideration in this case the right to control by judicial action an alleged unauthorized act of the Secretary of the Interior for which he was given no authority under any act of Congress.

It is insisted that mandamus is not the proper remedy in cases such as the one now under consideration. But we are of opinion that mandamus may issue if the Secretary of the Interior has acted wholly without authority of law. Since *Marbury* v. *Madison*, 1 Cranch, 137, it has been held that there is a distinction between those acts which require the exercise of discretion or judgment and those which are purely ministerial, or are undertaken entirely without authority, which may become the subject of review in the courts. The subject was under consideration in *Noble* v. *Union River Logging Railroad*, 147 U. S. 165, 171, and Mr. Justice Brown, delivering the opinion of the court, cites many of the previous cases of this court, and, speaking for the court, says:

"We have no doubt the principle of these decisions applies to a case wherein it is contended that the act of the Head of a Department, under any view that could be taken of the facts that were laid before him, was *ultra vires*, and beyond the scope of his authority. If he has no power at all to do the act complained of, he is as much subject to an injunction as he would be to a mandamus if he refused to do an act which the law plainly required him to do. As observed by Mr. Justice Bradley in *Board of Liquidation* v. *McComb*, 92 U. S. 531, 541: 'But it has been well settled that when a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain personal injury by such refusal may have a *mandamus* to compel its performance; and when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction

to prevent it. In such cases the writs of *mandamus* and injunction are somewhat correlative to each other.' "

We think this principle applicable to this case, and that there was jurisdiction to issue the writ of mandamus.

In our view this case resolves itself into a question of the power of the Secretary of the Interior in the premises, as conferred by the acts of Congress. We appreciate fully the purpose of Congress in numerous acts of legislation to confer authority upon the Secretary of the Interior to administer upon the Indian lands, and previous decisions of this court have shown its refusal to sanction a judgment interfering with the Secretary where he acts within the powers conferred by law. But, as has been affirmed by this court in former decisions, there is no place in our constitutional system for the exercise of arbitrary power; and if the Secretary has exceeded the authority conferred upon him by law, then there is power in the courts to restore the status of the parties aggrieved by such unwarranted action.

In the extended discussion which has been had upon the meaning and extent of constitutional protection against action without due process of law, it has always been recognized that one who has acquired rights by an administrative or judicial proceeding cannot be deprived of them without notice and an opportunity to be heard.

The right to be heard before property is taken or rights or privileges withdrawn, which have been previously legally awarded, is of the essence of due process of law. It is unnecessary to recite the decisions in which this principle has been repeatedly recognized. It is enough to say that its binding obligation has never been questioned in this court.

The acts of Congress, as we have seen, have made provision that the commission shall certify from time to time to the Secretary of the Interior the lists upon which the names of persons found by the commission to be entitled to enrollment shall be placed. Upon the approval of the Secretary of the Interior these lists constitute a part and parcel of the final

rolls of citizens of the Choctaw and Chickasaw tribes and Chickasaw freedmen, upon which allotments of lands and distribution of tribal property shall be made.

The statute provides in § 30, act of July 1, 1902, *supra:*

"Lists shall be made up and forwarded when contests of whatever character shall have been determined, and when there shall have been submitted to and approved by the Secretary of the Interior lists embracing names of all those lawfully entitled to enrollment the rolls shall be deemed complete. The rolls so prepared shall be made in quintuplicate, one to be deposited with the Secretary of the Interior, one with the Commissioner of Indian Affairs, one with the principal chief of the Choctaw Nation, one with the governor of the Chickasaw Nation, and one to remain with the Commission to the Five Civilized Tribes."

The Secretary took the action contemplated by this section and acted upon the list forwarded by the commission. The roll was made up and distributed in quintuplicate, as required by the statute. Notice was given to the commission, and land was allotted to the relator, as provided by § 23 of the act of July 1, 1902, *supra.* The relator thereby acquired valuable rights, his name was upon the rolls, the certificate of his allotment of land was awarded to him. There is nothing in the statutes, as we read them, which gave the Secretary power and authority, without notice and hearing, to strike down the rights thus acquired.

Nor do we think it is an answer to the petition for a writ of mandamus to say, as is earnestly contended by the counsel for the Government, that Goldsby's case comes within the provisions of the act of July 2, 1902, establishing a citizenship court, as it appears in this record that he was one of the claimants whose judgment in the court of the Indian Territory was annulled by the subsequent procedure in the citizenship court, leaving to Goldsby the remedy of appealing himself to that court, which, having failed to do, he has lost all right to enrollment, and therefore the decision of the Secretary of March 4,

1907, striking him from the rolls ought not to be interfered with for the reason that the writ of mandamus, upon well-settled principles, ought not to issue to require the Secretary to do that which it now appears he never had any lawful authority to do. But we are of opinion that the facts now adduced are insufficient to require us to say that Goldsby could not establish a right to enrollment. The Government contends, and we have held, that it does not appear in this case whether Goldsby's name was on the original or other tribal rolls, a fact essential to be known in order to determine whether his contention be sound that such an enrollment gave him the right to participate in the division of the funds and lands of the nation irrespective of the action of the Dawes Commission, the court of the Indian Territory, or the citizenship court. The question here involved concerns the right and authority of the Secretary of the Interior to take the action of March 4, 1907, in summarily striking the relator's name from the rolls. That is the question involved in this case.

For the reasons given we think this action was unwarranted, and that the relator is entitled to be restored to the status he occupied before that order was made.

*The judgment of the Court of Appeals of the District of Columbia is affirmed.*