# SORRELS v. JONES *et al.*

No. 277.   Opinion Filed Julv 2, 1910.

(110 Pac. 743.)

1.   INDIANS—Actions — Recovery of Lands—Burden of Proof.   In an action of ejectment by an allottee of the Chickasaw Tribe of Indians, where plaintiffs, in support. of their title, show that the lands in controversy were allotted to them and certificates of allotment issued to them therefor, and that said certificates have never been canceled, and where defendants' only defense to the action is that their grantor selected said lands as his allotment before the same were allotted to plaintiffs, but admit that the selection of said lands as allotment for their grantor has been canceled by the Secretary of the Interior, the buraen is upon defendants to show facts rendering the order of cancellation invalid in order to overcome the presumption of plaintiffs' right to possession of the lands arising from the certificates of allotment to them, and obtaining by reason of section 23 of the Supplemental Treaty with the Chickasaw and Choctaw Tribes of Indians (32 Stat. p. 644).

2.   INDIANS—Lands—Allotment — Cancellation.   The Secretary of the Interior, in the exercise of his jurisdiction over the Commission to the Five Civilized Tribes in the allotment of the tribal lands by the Commission to the members of the Chickasaw and Choctaw Tribes of Indians, has power, before the issuance of certificate of allotment, upon notice to the allottee, to cancel the selection of allotment when the same has been procured by mistake of law or by fraud, although nine months have expired since the selection of the allotment and no contest was filed during said period.

3.   SAME—Notice of Cancellation.   Failure to give the grantee of the allottee notice of a proceeding to cancel such an allotment does not have the effect to render the order of cancellation a mere nullity.

4.   INDIANS—Recovery of Land—Title to Maintain Action.   A member of the Choctaw Tribe of   Indians, to whom an allotment of land has been made and certificate of allotment therefor issued, has an equitable title to the lands sufficient to authorize him, under section 4788 of Wilson's Revised and Annotated Statutes of 1903, to maintain an action of ejectment for the possession of said lands.

(Syllabus by the Court.)

Sorrels v. Jones *et al.*

*Error from District Court, Carter County; S. H. Russell, Judge.*

Action by Mrs. Katherine Sorrels for herself and as guardian against Charles Jones and another. From a judgment in favor of defendants, plaintiff brings error. Reversed and remanded.

This was originally a suit in ejectment brought by plaintiffs in error, plaintiffs below, to recover possession of a certain tract or parcel of land· which plaintiffs claim to have been allotted to them as members of the Choctaw Tribe of Indians. The trial in the court below was upon an agreed statement of facts, which, in substance, is as follows: The enrollment of one Apesahona as a member of the Choctaw Tribe of Indians by blood was duly approved by the Secretary of the Interior on the 12th day of December; 1902. On the 19th day of December, 1904, one T. N. Dumas was appointed administrator of the estate of Apesahona, deceased, and on the 20th day of December, 1904, the said Dumas made application to the Commission to the Five Civilized Tribes at Tishomingo to select, as an allotment in the name of and for the said Apesahona, the lands involved in this action. Said application for selection of the allotment was accepted by the Commission and the lands in controversy selected as his allotment. No further action relative to said allotment was taken until the month of March, 1905, when the Commissioner to the Five Civilized Tribes directed the members of the local land office at Ardmore to withhold any further action, for the reason that an investigation of the enrollment of the said Apesahona was being made. On or about 10 days before the 3d day of May, 1906, notice was mailed to the said Dumas of a hearing in a proceeding to cancel the enrollment of Apesahona; and on the 19th day of October, 1906, his said enrollment and the allotment made on the 20th day of December, 1904, were canceled by order of the Secretary of the Interior, upon the ground that the said Apesahona had died prior to the 25th day of September, 1902, to wit, in the year 1899. Subsequent to the selection by the administrator of the land in controversy as the allotment of Apesahona, the same was conveyed by Apesahona's

heirs to defendants, and it is agreed that defendants are the pur-
chasers of said lands from his heirs, without any knowledge of the
claim that Apesahona had died prior to the 25th day of September,
1902, and that defendants never had any notice of any character
of the proceeding to cancel said enrollment and allotment, until
after the order canceling same had been made. No certificate of
allotment or patent was ever executed and delivered to the said
Dumas or the heirs of Apesahona. Blank certificates of allotment
were filled out and prepared to be executed by the Commission;
but, before the same were executed, the enrollment and allotment
of Apesahona were canceled by order of the Secretary of the In-
terior, and said certificates as prepared were marked "canceled"
and never executed or delivered by the Commission. On the 8th
day of November, 1906, the lands in controversy were allotted to
plaintiffs, and on or about nine months thereafter certificates of
allotment were issued by the proper authorities and delivered to
them.

From a judgment of the trial court in favor of defendants,
this proceeding has been brought.

*H. A. Ledbetter* and *J. B. Moore,* for plaintiff in error.
*Cottingham & Bledsoe,* for defendants in error.
Briefs did not reach the reporter.

HAYES, J.   (after stating the facts as above). In ascertain-
ing what questions of law are presented to this court for determi-
nation by this proceeding, it will be helpful to briefly state the
theories of the respective parties as evidenced by their pleadings
and their contentions thereunder. Plaintiffs allege in their petition
that they are members of the Choctaw Tribe of Indians, duly
enrolled as such; that they have had allotted to them by the
Commission to the Five Civilized Tribes the lands in controversy,
and have received from said Commission certificates of allotment
for said lands; and that said certificates of allotment have never
been canceled, and they pray for a judgment giving them pos-
session.

Defendants, by their answer, deny the allotment of the lands to plaintiffs and the issuance of the allotment certificates, and allege the allotment of said lands to Apesahona, deceased, as stated above, admitting, however, in their answer that said allotment to Apesahona was canceled after the expiration of nine months from the selection of the allotment and after the conveyance by the heirs of Apesahona to them, but allege that the cancellation was made without notice to any of them, and they pray that plaintiffs take nothing and that they have affirmative relief against plaintiffs. One of defendants' contentions is that whatever right or title plaintiffs acquired to the lands in controversy by the allotment thereof and the issuance of certificates of allotment to them is held by plaintiffs in trust for defendants, and the judgment of the trial court, after denying the plaintiffs any relief, decrees that defendants are the owners of the equitable title to the lands in controversy; and that any and all title, right, or interest held in said lands by plaintiffs is held in trust for defendants; and that such title and interest be divested from plaintiffs and vest in the defendants; and that defendants' title as against the plaintiffs be quieted.

Defendants contend that the order of the Secretary of the Interior cancelling the allotment of Apesahona, made without notice to them and after the expiration of nine months from the selection of his allotment during which time no contest had been filed, is an absolute nullity, and, if plaintiffs acquired any right or title in the land in controversy by their subsequent allotment thereof and by the issuance to them of certificates of allotment for same, it is only an equitable title and is inferior to the equitable title acquired by defendants from the heirs of Apesahona, without notice that Apesahona died before September 25, 1902, or that it was claimed that he had so died. This contention presents two questions of law. First, what, if any, jurisdiction, other than the power to issue to the allottee certificates of allotment and patent, has the Secretary of the Interior over allot-

ments of land to members of the Choctaw and Chickasaw Tribes of Indians after the expiration of nine months from the selection and filing upon the allotment by an enrolled member of said tribes, where no contest has been filed during said period of nine months and no certificate of allotment has been issued to the allottee? Second, if the Secretary of the Interior has power to cancel such allotment for any cause, can he do so where the allotment has been conveyed to third persons without notice to the allottee's grantees of the proceeding to cancel? The power of the heirs of Apesahona at the time they conveyed to defendants to alienate their title in the lands selected for the allotment of the decedent and the sufficiency of their deed to defendants for that purpose have not been questioned; and we shall assume, as the parties hereto and the trial court have done, that they had power to convey to defendants whatever title they had, and that their deed to defendants is sufficient for that purpose. It is unnecessary to recite at length the numerous acts of Congress to extinguish the tribal title to Indian lands belonging to the Five Civilized Tribes and to allot the same among the members thereof.

Section 23 of what is generally known as the Supplemental Treaty with the Choctaw and Chickasaw Indians (32 Stat. 644) provides that:

"Allotment certificates issued by the Commission to the Five Civilized Tribes shall be conclusive evidence of the right of any allottee to the tract of land described therein, and the United States Indian Agent, at the Union Agency, shall, upon application of the allottee, place him in possession of his allotment and shall remove therefrom all persons objectionable to such allottee, and the act of the Indian Agent thereunder shall not be controlled by a writ or process of any court."

When plaintiffs established that certificates of allotment had been issued by the proper authorities to them for the lands in controversy, and that such certificates had never been canceled, the burden of proof upon them to show that they had such right or title in the lands as entitled them to possession thereof was dis-

charged. These certificates are not mere *prima facie* evidence of such right or title, but they are made by the statute conclusive evidence thereof. The burden of proof then shifted to defendants to show that the title under which they claimed was superior to the title of plaintiffs; and, since defendants hold as grantees of an alleged allottee to whom neither certificate of allotment nor patent has ever been issued, this burden they could discharge only by showing that plaintiffs' certificates of allotment were issued without authority of law, or that their issuance was attended by such irregularities as to render them void. This defendants undertook to do by showing the selection of the land by the administrator of Apesahona as the allotment of said decedent, and that no valid cancellation of such allotment had been made when the lands were allotted to plaintiffs; and that they were therefore not subject to allotment. No certificate of allotment having ever been issued to the allottee, Apesahona, or his administrator, and it being admitted that the selection of the allotment made by the administrator had been canceled by the Secretary of the Interior before the allotment was made to plaintiffs, in order to overcome the high probative force that the statute gives plaintiffs' certificates of allotment as the evidence of their right to the land covered thereby, the burden was upon defendants to show facts rendering said cancellation a nullity, or, if not an absolute nullity, that it was made under such circumstances as not to conclude defendants, and then to show facts establishing that the cancellation was wrongfully made.

Section 11 of said Supplemental Agreement provides:

"There shall be allotted to each member of the Choctaw and Chickasaw Tribes, as soon as practicable after the approval by the Secretary of the Interior of his enrollment as herein provided, land equal in value to three hundred and twenty acres of the average allotable land of the Choctaw and Chickasaw Nations, * * *"

Section 27 provides:

"The rolls of the Choctaw and Chickasaw citizens and the Choctaw and Chickasaw freedmen, shall be made by the Commis-

sion to the Five Civilized Tribes in strict compliance with the
act of Congress approved June 28, 1898 (30 U. S. St. at L. p. 495)
and the act of Congress approved May 31, 1900 (31 U. S. St. at
L. p. 221.), except as herein otherwise provided.   *   *   * "

The acts of June 28, 1898, and of May 31, 1900, confer upon
the Commission to the Five Civilized Tribes power to make rolls
of the members of the Choctaw and Chickasaw Tribes of Indians
and to allot the lands of the tribes to the members thereof, subject
to the direction and supervision of the Secretary of the Interior.
Section 24 of the Supplemental Agreement, *supra,* re-enacts in ef-
fect some of the provisions of the acts of 1898 and of 1900 in the
following language:

"Exclusive jurisdiction is hereby conferred upon the Commis-
sion to the Five Civilized Tribes to determine under the direction
of the Secretary of the Interior all matters relating to the allot-
ment of lands."

This supervisory jurisdiction of the Secretary of the Interior
over the Commission in matters pertaining to the allotment of
lands to the members of the Five Civilized Tribes is similar to the
supervisory jurisdiction of the Public Land Department over the
register and receiver of local land offices in the administration of
public lands, subject to homestead entry.

By the various acts of Congress and treaties with the tribes
already referred to herein, members of the tribes were permitted
to select their allotments of land to which they and the members
of their family are entitled from the lands theretofore in their
possession and upon which they had placed improvements, pro-
vided such selection was made within the time prescribed by stat-
ute. But, where any member of the tribe was holding in his
possession more tribal lands than that to which he and the mem-
bers of his family were entitled to allot as their share of the tribal
lands, such excessive holding by such Indian was subject to be al-
lotted by any other member of the tribe after 90 days after the
opening of the land office of the Commission for the purpose of re-
ceiving selections of allotments and after notice to the member of

the tribe alleged to be holding lands in excess of that to which he was entitled as allotments for himself and the members of his family.   Section 25 of the Supplemental Agreement.   Section 69 of said Agreement reads:

"All controversies arising between members as to their right to select particular tracts of land, shall be determined by the Commission to the Five Civilized Tribes."

Section 71 provides:

"After the expiration of nine months after the date of the original selection of allotment by or for any citizen or freedman of the Choctaw and Chickasaw Tribes as provided in this Agreement, no contest shall be instituted against such selection."

By these sections, where one member of the tribe selected lands as his allotment to allot which another member of the tribe claimed a right, the power and jurisdiction to determine the respective rights of said members was conferred upon the Commission; but, by section 61, a limitation in time was fixed upon the right of the contesting claimant to institute a proceeding  before the Commission in which to have his rights determined.   Some provision of the nature of a statute of limitation upon the right of one member of the tribe to contest the right of another member to select any particular tract of land as his allotment was necessary to the expeditious administration of the tribal lands in the allotment thereof to the members of the tribes; but we do not think it was intended by section 71 to provide that, after the expiration of nine months from the date of the original selection of an allotment, the Department of the Interior had no jurisdiction whatever over a selection of an allotment other than to issue certificate of allotment and patent therefor.   A member of the tribe, whose enrollment as such has been approved by the Secretary of the Interior, and who has selected as his allotment lands of the tribe of which he is a member, not reserved by statute from allotment, when nine months have expired from the date of his selection, has done everything required of him by the law to be done, in order to be entitled to have as his allotment the lands selected by him, and to receive

therefor a certificate of allotment and patent.  At the expiration of, such period, in the absence of a contest, such an allottee has an equitable right in the lands selected by him as his allotment, and has a right to receive certificate of allotment and patent, of which rights he cannot be arbitrarily deprived by the Secretary of the Interior or other officers of the Interior Department; but, if said right has been acquired by fraud or by mistake of law, he has, in equity, no right, and it is our view, for the reasons hereinafter given, that, until the certificate of allotment is issued, if not until the patent has been issued (which last question we do not decide in this case), the Secretary of the Interior in the administration of such lands may, upon proper notice to him, cancel a selection of an allotment which was unauthorized by law or procured by fraud.

In discussing the power of supervision of the Public Land Office over the acts of the register and receiver of a local land office, Mr. Justice Field, speaking for the Supreme Court of the United States, in *Cornelius v. Kessel,* 128 U. S. 461, 9 Sup. Ct. 124 (32 L. Ed. 482), said:

"The power of supervision possessed by the Commissioner of the General Land Office over the acts of the register and receiver of the local land offices in the disposition of the public lands undoubtedly authorizes him to correct and annul entries of land allowed by them, where the lands are not subject to entry, or the parties do not possess the qualifications required, or have previously entered all that the law permits.  The exercise of this power is necessary to the due administration of the Land Department.  If an investigation of the validity of such entries were required in the courts of law before they could be canceled, the necessary delays attending the examination would greatly impair, if not destroy, the efficiency of the department.  But the power of supervision and correction is not an unlimited or an arbitrary power.  It can be exerted only when the entry was made upon false testimony, or without authority of law.  It cannot be exercised so as to deprive any person of land lawfully entered and paid for.  By such entry and payment the purchaser secures a vested interest in the property and a right to a patent therefor, and can no more be deprived of it

by order of the Commissioner than he can be deprived by such order of any other lawfully acquired property. Any attempted deprivation in that way of such interest will be corrected whenever the matter is presented so that the judiciary can act upon it."

That one, who under the law is qualified to make entry upon part of the public lands of the United States, and whose entry has been accepted by the register and receiver of the local land office, and upon proof of residence required by law and payment of the purchase price has issued to him a final certificate, thereby acquires an equitable title in the lands entered of which he cannot be deprived by the Commissioner of the General Land Office or the Secretary of the Interior, without notice or arbitrarily after notice, is too well settled to require discussion. *Orchard v. Alexander,* 157 U. S. 383, 15 Sup. Ct. 635, 39 L. Ed. 737; *Cornelius v. Kessel, supra.* But it is equally well settled that, if such entry is made and final certificate issued without authority of law or upon false testimony, the entry may be canceled after notice to the entryman and opportunity to be heard. *Orchard v. Alexander, supra; Guaranty Sav. Bank v. Bladow,* 176 U. S. 448, 20 Sup. Ct. 425, 44 L. Ed. 540; *Thayer v. Spratt,* 189 U. S. 346, 23 Sup. Ct. 576, 47 L. Ed. 845; *Peyton et al. v. Desmond,* 129 Fed. 1, 63 C. C. A. 651. Every reason adduced by the courts in support of the power of the Public Land Commissioner to cancel for said causes upon notice to the entryman an entry upon public lands after issuance of final certificate, but before issuance of patent, is applicable with equal force to support the power of the Secretary of the Interior to cancel allotment to the members of the tribes before issuance of the allotment certificates. Not all lands of the tribe are subject to allotment, and not all members of the tribes whose names appear upon the final rolls as provided by the Secretary of the Interior are entitled to select and receive allotments. All lands for town-site purposes and all lands segregated as being valuable for mineral purposes are not subject to be taken by any member of the tribe as his allotment. Section 22 of the Supplemental Treaty reads:

"If any person whose name appears upon the rolls, prepared

as herein provided, shall have died subsequent to the ratification of this agreement and before receiving his allotment of land, the lands to which such person would have been entitled, if living, shall be allotted in his name, and shall, together with his proportionate share of other tribal property, descend to his heirs according to the laws of descent of the statutes of Arkansas: Provided, that the allotment thus to be made shall be selected by a duly appointed administrator or executor. If, however, such administrator or executor be not duly expeditiously appointed, or fails to act promptly when appointed, or for any other cause, such selection be not so made within a reasonable and practicable time, the Commission to the Five Civilized Tribes shall designate the lands thus to be allotted."

And by section 35 it is provided:

"That no allotment of land or other tribal property shall be made to any person, or to the heirs of any person whose name is on the said rolls, and who died prior to the date of the final ratification of this Agreement. The right of such person to any interest in the lands or other tribal property shall be deemed to have passed to the tribe in general upon his death before the date of the final ratification of this Agreement, and any person or persons who may conceal the death of any one on said rolls as aforesaid, for the purpose of profiting by the said concealment, and who shall knowingly receive any portion of any land or other tribal property, or of the proceeds so arising from any allotment prohibited by this section, shall be deemed guilty of a felony, and the penalty for this offense shall be confinement at hard labor for a period of not less than one year nor more than five years, and in addition thereto, a forfeiture to the Choctaw and Chickasaw Nations of the lands, other tribal property, and proceeds so obtained."

Can it be contended that where the Commission by mistake allots to a member of the tribe lands reserved for town-site purposes or for mineral purposes, or that if the member whose name appears upon the final roll of the tribe died before the final ratification of the Supplemental Treaty, but by false testimony it was made to appear to the Commission that he died after such date, and the Commission thereupon permitted his administrator to select an allotment for him, such errors of the

Commission cannot be corrected by cancellation of the allotment upon notice to the proper parties before the certificate of allotment is issued, although nine months have elapsed without contest? The allottee in neither of such cases would have any standing in a court of equity to compel by mandamus the issuance to him of a certificate of allotment or patent; and, if either or both be issued to him, it would be the duty of the Secretary of the Interior to have proceedings instituted in the proper court to obtain a cancellation thereof. No reason exists why such circuitous procedure should be taken to correct a plain error of the Commission, or to deny to the Secretary power to correct such error upon proper notice to the allottee. To deny to the department such power would result in delay in the administration and allotment of the tribal lands.

Defendants do not allege in their answer that no notice of the proceeding to cancel the allotment was given to the administrator or to the heirs, their grantors. They allege only that they did not have such notice. There is no evidence as to whether the heirs had or had not notice. Whether the admission in the agreed statement of facts that the record of the Commission to the Five Civilized Tribes shows that notice was mailed to the administrator would be sufficient to prove notice to him, if the burden were upon plantiffs to establish the validity of the order of cancellation instead of it being upon defendants to establish its validity, is unnecessary to be determined in this proceeding, for it is clear that such admission does not establish that he did not have notice; and it is also unnecessary to decide whether the notice should have been given to the administrator or Apesahona, or to the heirs or to all of them, since there is no proof that it was not given to them all. Failure to give notice to defendants does not render the order of cancellation an absolute nullity, because they had purchased without knowledge that the allotment had been irregularly obtained. The selection of the allotment and the expiration of nine months thereafter without contest being filed against the

allottee's right of selection does not transfer any legal title to the allottee; it gives to him only an equitable claim upon the government for a certificate of allotment and patent to the land. A purchaser from such allottee acquires only the title his grantor had, to wit, an equitable title, subject to be canceled by the Secretary of the Interior, if the allotment was obtained without authority of law or by false testimony; and those who deal in such titles must be held to do so with full knowledge of their character. *Guaranty Sav. Bank v. Bladow, supra.*

Defendants are *bona fide* purchasers only in the sense that they had no knowledge of any violation of the law in the obtaining of the allotment to Apesahona that rendered such allotment subject to cancellation upon notice to the allottee. They are not *bona fide* purchasers in the sense that they had no knowledge that it was subject to cancellation upon certain grounds, and they took the title subject to that infirmity. Cancellation after notice to the allottee is conclusive against him upon all questions of fact upon which evidence was offered. To this extent the order of cancellation under the present state of the evidence in this case cannot be held to be an absolute nullity; but it does not conclude defendants as grantees, since it is admitted that they had no notice of the proceedings to cancel or of any irregularity which rendered the allotment subject to cancellation. The order of cancellation destroys the efficacy of the selection of the allotment by the administrator as evidence of the defendant's title; but they may, by proceedings before a judicial tribunal, after the legal title is conveyed by the government and the department loses jurisdiction over the lands, contest the right of the government's grantee by showing that Apesahona was entitled to have the land allotted to him, that there was neither mistake of law nor fraud in the selection of the allotment. *Guaranty Sav. Bank v. Bradow, supra.* Defendants did not undertake to pursue this course, either in their effort to establish a defense to plaintiff's petition, or to establish a right to affirmative relief under their cross-petition, but

have relied throughout upon the absolute nullity of the order of cancellation. They do not undertake to show that the order should not have been made for any reason other than upon the ground that they had not been served with notice.

The appearance of the name of a person upon the approved rolls of the tribe is not alone sufficient to entitle such person or his estate to share in the tribal property. If such person be deceased before allotment is made to him, he must in that event have died since the ratification of the Supplemental Treaty. It is admitted that the cancellation was made because Apesahona died something like three years before that date. If the ground upon which the allotment was canceled is not true, the burden was upon defendants to show such fact.

Able counsel for defendants cite *Garfield v. Goldsby*, 211 U. S. 249, 29 Sup. Ct. 62, 53 L. Ed. 168, as being in point and decisive of the questions in this case in favor of defendants. In this construction of the effects of that case we cannot agree. In that case the Secretary of the Interior had struck from the approved rolls of the Chickasaw Tribe of Indians the name of one Goldsby, without notice to him or an opportunity for hearing, and the action was brought for mandamus to compel the Secretary of the Interior to reinstate Goldsby's name upon the rolls. The question decided in that case was clearly defined in the opinion in the following language:

"The question here involved concerns the right and authority of the Secretary of the Interior to take the action of March 4, 1907, in summarily striking the relator's name from the rolls. That is the question involved in this case."

The court held that the Secretary of the Interior did not have the power and authority, without notice and hearing, to strike down the rights of one whose enrollment as a member of the Chickasaw Tribe of Indians had been approved by the Secretary of the Interior, and who had selected his allotment of land and received certificate of allotment therefor. In that case the certificate of allotment had been issued before the order of

the Secretary of the Interior complained of was made. In the case at bar it had not; and the court in that case did not hold that the Secretary of the Interior was without authority, after notice to an enrolled member, to cancel for any cause his enrollment or to cancel his allotment. The respondent in that case in his answer set up certain facts which he contended established that Goldsby was not entitled to enrollment. The court held that the facts set up were insufficient to require the court to say that Goldsby could not establish a right to enrollment. But the case does not hold, nor is the language of the court so broad as to justify, the inference that it was the conclusion of the court that the Secretary of the Interior in no event had jurisdiction to cancel the enrollment of an Indian or to cancel an allotment after the expiration of nine months, without contest, either before or after the issuance of the certificate of allotment, if upon notice to the allottee it is shown that the enrollment or selection of allotment was procured by mistake of law or by fraud. We do not mean by this comment on that case to hold that an allotment can be canceled for any cause after the issuance of certificate of allotment but before issuance of patent. The issues of this case do not require us to decide that question; and we say only that we do not understand the Goldsby Case as either deciding or by inference from the reasoning of the court therein the question here involved.

By section 4788, Wilson's Rev. & Ann. St. Okla. 1903, it is provided that in an action for recovery of real property it will be sufficient if the plaintiff states in his petition that he has a legal or equitable estate in the land sought to be recovered, and is entitled to the possession thereof, and the defendant unlawfully keeps him out of possession. In making application of this statute, the Supreme Court of the territory, in *Laughlin v. Fariss,* 7 Okla. 1, 50 Pac. 254, and *McClung v. Penny,* 12 Okla. 303, 70 Pac. 404, held that when a homestead entryman has complied with all the requirements of the federal statute applicable to the dispos-

ing of land occupied by him; and has made his final proof, paid the amount of money required, and received final certificate therefor, he has an equitable title in the land, which under this statute will support an action in ejectment. The equitable title of plaintiffs, evidenced by their certificate of allotment, is sufficient title to support their action.

For the foregoing reasons, we think the trial court committed error in denying the plaintiffs judgment for possession, and, for the same reasons, committed error in rendering judgment for defendants, granting to them the affirmative relief prayed for in their answer.

The judgment of the trial court is reversed, and the cause remanded.

All the Justices concur.