**KEMOHAH et al. v. SHAFFER OIL & REFINING CO. et al. (UNITED STATES, Intervener).**

No. 448.

District Court, N. D. Oklahoma.
Feb. 28, 1930.

C. B. .Rogers and Edwin S. Booth, both of Tulsa, Okl., for plaintiffs.

Wm. J. Gregg, of Tulsa, Okl., for defendant Twin States Oil Co.

G. Earl Shaffer, of Tulsa, Okl., for defendant Shaffer Oil & Refining Co.

R. E. Berger, of Tulsa, Okl., for defendants Alexander and Sims.

L. N. Stivers, Asst. U. S. Atty., of Tulsa, Okl., for the United States.

KENNAMER, District Judge.

The plaintiff, Siller Kemohah, is the mother of Amos Tiger, Josephine Tiger, and William Tiger, minors. All are full-blood Creek Indians. They instituted this action against the Shaffer Oil & Refining Company and the Twin States Oil Company to recover possession of 160 acres of land located in Creek county, Okl., and damages for the alleged wrongful use of the land by the defendants, in the sum of $1,000,000. The petition alleges that the plaintiffs were the sole and only heirs at law of a full-blood enrolled member of the Creek Tribe of Indians named Do-saw-cher, enrolled opposite No. 7918 on the approved final rolls of the Creek Tribe of Indians; that the plaintiff Siller Kemohah was the wife of Do-saw-cher, and the other plaintiffs were the children of Do-saw-cher and Siller Kemohah.

The defendants answered denying generally the allegations of the plaintiffs' petition, and filed cross-petitions praying the court for a decree quieting their title as against the claims of the plaintiffs.

It appears from the evidence introduced on the trial of the cause that John Tiger, the deceased allottee, was enrolled opposite roll No. 3794 as a full-blood member of the Creek Tribe of Indians; that he died intestate in the year 1924; that he married the plaintiff Siller Kemohah on the 5th day of September, 1913, and of this marriage there was born to them the minor plaintiffs, Amos Tiger, Josephine Tiger, and William Tiger. The plaintiff Siller Kemohah and John Tiger were divorced on the 26th day of January, 1919, and on the date of his death he left surviving

him as his only heirs at law the minor plaintiffs in this action; that on the 23d day of November, 1899, Emma Lynch, who was the legal guardian of John Tiger, made a selection of an allotment for him, as his share of the tribal lands of the Creek Nation, located in section 12, township 18 north, range 12 east, which allotment was duly approved and patents therefor issued, received, and accepted by John Tiger, through his legally appointed guardian. John Tiger occupied and used the allotment during his lifetime. He obtained an order of removal of restrictions and sold part of the allotment. The evidence further discloses that the Commission to the Five Civilized Tribes enrolled the name of Do-saw-cher opposite roll No. 7918 upon the approved rolls of the Creek Tribe of Indians, and that there existed no such person as Do-saw-cher, as distinguished from John Tiger, and arbitrarily allotted to Do-saw-cher a full allotment of land located in section 11, township 18 north, range 7 east, the lands now in controversy, being a separate allotment from that selected by Emma Lynch as the guardian of John Tiger; that the Commission to the Five Civilized Tribes and the Secretary of the Interior discovered the fact to be that, through error and mistake, John Tiger had been enrolled under two separate and distinct numbers, No. 3794 as John Tiger and opposite No. 7918 as Do-saw-cher; that subsequent to the discovery of this fact, acting under authority of law, the Secretary of the Interior made an order striking from the approved rolls the name of Do-saw-cher and ordered the allotment, that had been arbitrarily selected in his name and the patents prepared for delivery, canceled. It appears that the patents for the lands selected for Do-saw-cher were approved by the Secretary of the Interior and sent to the principal chief of the Creek Tribe of Indians for execution and delivery, but that the patents were never in fact delivered to the allottee. The allotment selected in the name of Do-saw-cher was subsequently selected and allotted by Leslie King, a duly enrolled newborn Creek freedman enrolled opposite No. 505, and Alice Colbert, a duly enrolled newborn Creek freedman enrolled opposite No. 92. It is through these two subsequent allottees that the defendants deraign their title. The cause was transferred to the equity docket for a determination of the equitable issues raised by the answers and cross-petitions of the defendants and interveners.

It has been contended by counsel for the plaintiffs that the Secretary of the Interior was without authority of law to strike from the approved rolls the name of any member of the Creek Tribe of Indians without notice or a hearing; that the power of the Secretary ceased as to the allotment made in the name of Do-saw-cher after the selection of the allotment and the issuance of the patents therefor, which had been recorded in the office of the Commission to the Five Civilized Tribes.

It is well established that one who has acquired rights by an administrative or judicial proceeding cannot be deprived of them without notice and an opportunity afforded to be heard. Such deprivation would be without due process of law. Garfield, Secretary of the Interior, v. United States ex rel. Goldsby, 211 U. S. 249, 29 S. Ct. 62, 53 L. Ed. 168; United States v. Wildcat, 244 U. S. 111, 37 S. Ct. 561, 61 L. Ed. 1024. I am of the opinion that this rule cannot be invoked to sustain the contention of the plaintiffs in this case. The evidence discloses that the plaintiffs are the heirs of John Tiger, deceased; that John Tiger received his full allotment of land, occupied it, and appropriated it to his use during his lifetime. The minor plaintiffs in this case inherited his allotment upon his death; his entire share of the Creek tribal lands was selected by his legal guardian, Emma Lynch, under authority of section 3 of the Original Creek Agreement (31 Stat. 861, 862). This treaty provided that all the lands of the tribe shall be allotted among the citizens so as to give each an equal share of the whole in value as nearly as may be, in the manner following: "There shall be allotted to each citizen one hundred and sixty acres of land—boundaries to conform to the Government survey. * * * One hundred and sixty acres of land, valued at six dollars and fifty cents per acre, shall constitute the standard value of an allotment." Section 4 of the treaty provided that selections of minors may be by the father, mother, or guardian in the order named. These allotments were to be made to enrolled members of the tribe. These rolls were made and prepared by the Dawes Commission under authority of the Acts of Congress approved June 10, 1896 (29 Stat. 321), and June 28, 1898 (30 Stat. 495), and, when such rolls were approved by the Secretary of the Interior, they became the final authenticated evidence of the right of such enrolled member of the tribe to an allotment. There was no authority in law for enrolling the same member of the tribe twice, or allotting to the same member of the tribe two distinct allotments of lands of the average value. Where such has occurred, it was without authority of law. If intentionally done, it would be a fraud upon the other members of the tribe; if done

through accident, error, or mistake, such mistake should be corrected under the equity power of the court.

It is settled by the authorities that the Secretary of the Interior cannot arbitrarily strike from the approved rolls a member of the tribe that has been enrolled according to authority granted to the Dawes Commission and to the Secretary in reference to the making of the rolls, nor can the Secretary, where patents have been issued and title passed to a member of the tribe duly enrolled, cancel his enrollment as an allottee without a hearing, after notice. United States v. Wildcat, 244 U. S. 111, 37 S. Ct. 561, 61 L. Ed. 1024. Where the patent has been issued, duly approved, and delivered to the allottee, or properly recorded, title has so far passed and vested in such allottee that the Secretary of the Interior, acting in an administrative capacity in executing the authority granted to him in approving the selections of allotments made by enrolled members, would be powerless to correct such an error or mistake, and recourse must be had to a court of equity. This rule is applicable, where there is an enrolled member of the tribe entitled to an allotment and who asserts his right to such an allotment, as against the attempted act of the Secretary in striking him from the roll and canceling his allotment, or some person claiming and asserting title through such an allottee. But it must here be observed that in the instant case the Commission and the Secretary found that they had approved and enrolled a person by the name of Do-saw-cher, who in fact did not exist, as distinguished from John Tiger. John Tiger accepted the allotment selected by his legal guardian, Emma Lynch, and during his entire lifetime never asserted any claim to the lands allotted in name of Do-saw-cher. There is no evidence tending to establish the fact that there was such a person as Do-saw-cher, or in any way contravailing the finding of the Commission and the Secretary that Do-saw-cher had been enrolled under the name of John Tiger, and it is conclusively established that John Tiger received his allotment as provided by law, and acquiesced in the order made by the Secretary canceling the patents issued in the name of Do-saw-cher, but which were never delivered to him, if he in fact was in any manner thereby concerned, and cannot now be heard, through his alleged heirs, to assert title to an allotment made in the name of Do-saw-cher.

Section 23 of the Original Creek Agreement, approved March 1, 1901, ratified May 25, 1901 (31 Stat. 861, 867), provided that "the Secretary of the Interior shall furnish the principal chief with blank deeds necessary for all conveyances herein * * * and the principal chief shall thereupon proceed to execute in due form and deliver to each citizen who has selected or may hereafter select his allotment, which is not contested, * * * conveying to him all right, title, and interest of the Creek Nation and of all other citizens * * * to the lands embraced in his allotment certificate * * *. All conveyances shall be approved by the Secretary of the Interior, which shall serve as a relinquishment to the grantee of all the right, title, and interest of the United States in and to the lands embraced in his deed. Any allottee accepting such deed shall be deemed to assent to the allotment and conveyance of all the lands of the tribe, as provided herein, and as a relinquishment of all his right, title, and interest in and to the same, except in the proceeds of lands reserved from allotment. The acceptance of deeds of minors and incompetents, by persons authorized to select their allotments for them, shall be deemed sufficient to bind such minors and incompetents." It appears that the execution and delivery and acceptance of the deeds by the allottees, or persons authorized to act for them, is a prerequisite to the final vesting of the title in the allottee. The conveyance to him of other lands of the tribe in the form of a duplicate allotment would be without authority of law, and his acceptance of his pro rata share of the tribal lands in the manner and form provided by the treaty precluded him, or his heirs, from asserting title to other lands of the tribe.

In Paterson v. Winn et al., 24 U. S. (11 Wheat.) 380, 6 L. Ed. 600, it was held: "The validity of a patent for lands can only be impeached for causes anterior to its being issued, in a court of equity; but where the grant is absolutely void, as, where the state has no title, or the officer has no authority to issue the grant, the validity of the grant may be contested at law." In the case under consideration the Secretary had the power to approve patents issued to members found upon the final approved rolls of the tribe. The principal chief of the tribe had the right to execute such patents and deliver them to such allottees, but the Secretary was without authority to approve and cause to be delivered through the principal chief patents to lands to an allottee who had already received his distributive share of such tribal lands, and where such patents have been issued through

error or mistake, the Secretary, with the consent and acquiescence of the member of the tribe who would be the beneficiary of such mistake or error, may cancel such patents or correct such error or mistake, and cause such lands to be allotted to a member of the tribe entitled thereto. Sorrells v. Jones et al., 26 Okl. 569, 110 P. 743. Moreover, it is not contended that a court of equity would not, on proper showing, have the power to correct such a mistake or error.

I therefore conclude that the Secretary was acting within the authority of the law in causing to be stricken from the rolls the name of Do-saw-cher for the reason the same member of the tribe had been enrolled and received an allotment of land under the name of John Tiger. Decree should be entered for the defendants and the government, as prayed for in its bill of intervention.