JOINES, vs. ROBINSON, et al.

Opinion delivered September 23, 1903.

1. *Pleading and Practice—In Equity—Motion for New Trial Not Considered on Appeal, Because Unnecessary.*

   The motion for new trial and error assigned because of its being overruled will not be considered by this court as, this being a case in equity, the filing of such motion was unnecessary procedure, the case coming up on the record.

2. *Indian Lands—Lease—Validity—Conveyance Subject To.*

   Since the adoption of the Atoka Agreement (Act of Cong. June 28, 1898), agricultural or grazing leases made by Choctaws or Chickasaws for a period of five years are valid and binding; and a transfer of the rights of the Indian lessor to another Indian citizen, is subject to the rights of the non-citizen lessees.

3. *Indian Lands—Trespass—Injunction.*

   Where an Indian transferred his rights to certain lands which he had already leased to non-citizens for five years, to another Indian citizen and the latter enters and attempts to take possession thereof, regardless of the rights of the lessee, such entry is a naked trespass and will be enjoined.

Appeal from the United States Court for the Southern District.

HOSEA TOWNSEND, Judge.

Bill by A. A. Robinson and another against U. S. Joines. Decree for plaintiffs. Defendant appeals. Affirmed.

Action for injunction, begun in the United States Court for the Southern District of Indian Territory at Ryan. Complaint filed by A. A. Robinson and Lee Crenshaw, as plaintiffs, against Sherman Joines, defendant. The complaint in equity was filed February 25, 1902. To this complaint the defendant

demurred, and at the same time filed an answer. The demurrer came on to be heard before the court, and was overruled, defendant excepting, and the court issued its temporary restraining order against both plaintiffs and defendant, restraining them from interfering with the premises in controversy or interfering with the possession of each other, and referred the case to the master in chancery to take testimony and report thereon. A fair statement of the case is found in the master's report, which is as follows:

"Plaintiffs allege: That they are United States citizens and plaintiff Robinson is a resident of the Chickasaw Nation and the plaintiff Crenshaw is a citizen of the State of Texas, and the defendant claims to be an Indian citizen. That on the 10th day of April 1899, plaintiff Robinson leased from S. Hedges and others, named in said lease, who were acting for themselves and family, as Chickasaw Indians, for a term of five years, which land had been selected by said parties as their allotment of land in the Chickasaw Nation. Such land is described by metes and bounds in accordance with the government survey. That plaintiff Robinson took possession of said land and held the same until the fall of 1900, when he sold or sublet an undivided one-half interest in said land to his coplaintiff Lee Crenshaw, and that they together have occupied said land and paid the rent in accordance with said lease contract until the 31st day of October, 1901. The said lessors sold all their right in said premises to defendant, who had since claimed said land. That about the 1st of February, 1902, defendant unlawfully and wrongfully, together with a number of employes, entered said premises, and began the erection of fence, and inclosed ———— acres of said premises, cutting the same into blocks in the different inclosures, and is engaged in constructing such fences, and, if not restrained, will so construct the fences that the same will be worthless for pasture. That said land is suitable for pasture

and grazing purposes, and that he rented the same for grazing cattle and horses. That said land was inclosed with wire fences. That at different places in said pasture there was lasting water. That defendant has so constructed his fence and divided his land into different lots that it obstructs the stock in their ingress and egress from and to many parts of the pasture, and renders said pasture almost valueless for grazing purposes, by preventing them from having access to the water. That plaintiffs have put feed for their cattle at convenient points, and, if defendant is allowed to complete the fence, it will obstruct access to said field, thereby causing great and irreparable injury, and thereby interfering with plaintiff's peaceful enjoyment of said property. That the erection of said fence is an intolerable nuisance, and a trespass upon the plaintiff's rights, and will deprive plaintiffs of the peaceful enjoyment of said land, and that the damage that will result will be difficult to estimate, and that they have no adequate remedy at law for all the injuries and damage done plaintiffs. Plaintiffs pray for a temporary restraining order restraining defendant, his agents, servants, and employes, from interfering with plaintiffs' peaceable possession of said premises, and upon final hearing that said injunction be made prepetual.

"Answer. Defendant denies each and every material allegation in plaintiffs complaint, and makes his answer a cross-bill, and alleges that he is a Chickasaw Indian by blood, and as such is entitled to a portion of the public domain of the Chickasaw Nation. And he alleges that about the 1st of October, 1901, he entered upon the lands in controversy, and took same as part of his approximate share of allotment, which he was entitled to do, and has been enjoying the peaceable possession of same since the said 1st day of October, 1901; that plaintiffs and their employes have entered upon and attempted to take forcible possesrion of said land, and have armed themselves, and threatened defendant and his employes with great bodily harm for the pur-

pose of intimidating and preventing defendant from asse....ting his rights to the same; that plaintiff Robinson is a United States citizen, and has no right to the possession of the said premises; that plaintiff Crenshaw is a noncitizen, and plaintiff Robinson is notoriously insolvent; that plaintiffs threaten to take forcible possession of said premises, and destroy defendant's improvements, and, defendant believes, do him bodily harm, and unless restrained are likely to carry said threats into execution; that by reason of such wrongful acts the defendant has been damaged a thousand dollars. Defendant prays for a temporary restraining order to be made perpetual, and that plaintiffs take nothing by this action.

"The foregoing are some of the allegations of the pleadings that I deem essential in directing me in making this report. This is an action brought by plaintiffs for the purpose of restraining defendant from entering and erecting fences in plaintiff's pasture and depriving plaintiffs of the use of sams. Defendant denies plaintiff's right to the possession of said premises, and claims to have the right to the same as an Indian citizen. Both pray for an injunction against each other. This case is referred to me for the purpose of taking testimony of the witnesses and reporting my findings of the facts to the court. I took the testimony of the witnesses for plaintiffs and defendant, and submit the same to your honor with this report. Plaintiffs request special findings on four special issues, and defendant requests special findings on thirteen propositions. I decline to make the findings in form as requested, because I can make the findings as requested from the facts was shown by the testimony, in a general way, with less labor, and more satisfactory to myself.

## "FINDINGS OF MASTER."

"First. I find that plaintiffs are United States citizens, and that plaintiff A. A. Robinson resides upon part of the land

in controversy, and that plaintiff Crenshaw is a nonresident of the Indian Territory, and that defendant is a Chickasaw Indian by blood.

"Second. I find that plaintiff Robinson, on the 10th day of April, 1899, leased 9140 acres of land for grazing purposes from one Hedges and his family and others, named in said contract. The said lease was in writing, and run for the period of five years, ending on the 10th day of April 1904. By the terms of said lease plaintiff was to pay the said lessors ten cents per acre per annum as rent upon said land; and that said land was enclosed with a wire fence. That said lessors declared their intention to take said land as a part of their allotment of the lands of the Chickasaw Nation.

"Third. That plaintiff Robinson immediately took possession of said premises, and held and used the same for grazing purposes until the fall of 1900, when he sold one undivided half interest in said premises to his coplaintiff, Crenshaw, and that they have since held the same, and have pastured from seven to nine hundred cattle on said land, and complied with the terms of said contract, and paid the rent until the 31st day of October 1901, and there is no more rent due until the 10th day of April, 1902. That said land was inclosed with a wire fence.

"Fourth. I find that on the 4th of November, 1901, the said Hedges and others sold and conveyed their Indian rights to seven thousand three hundred and sixty acres of said land to defendant, but that Ridenour and Adams, plaintiff's lessors, have not transeferrd their interest to defendant; that defendant claims said land as his approximate share of the Indian lands for himself and family.

"Fifth. That in February of this year the defendant, without the consent of the plaintiffs, entered upon said lands, and erected fences inclosing about three sections of land from the

southwest corner of said land. The western string of said fence so erected was about one and a half miles in length, and the string on the south about two miles in length, and on the north two miles in length, and on the east one and one-half miles in length. That there are no openings left that make it accessible from the outside. That the west string of said fence is about a half mile inside of plaintiff's west string of fence and just inside of plaintiff's fence on the south. That defendant placed his fence on the section line, leaving twenty feet for road. That there was lasting water in said lands inclosed by defendant that makes it valuable to said pasture for grazing purposes. The land lying on the west between plaintiffs' and defendant's inclosure is about one half mile wide, a mile and a half long. That the defendant has sold the same to Indian citizens, and that more than one mile of plaintiffs' fence has been removed, and that defendant has sold part of the premises, east of his inclosure to Indian citizens.

"Sixth. That defendant has erected a string of fence beginning at or near the northeast corner, and inside of plaintiff's pasture fence, running in an easterly direction to the northeast corner of plaintiffs' fence, cutting off about 160 acres of plaintiff's pasture, and separating it from the rest of the pasture and that defendant has put up posts running in a southern direction from the said northeast corner for the purpose of putting wires through the same; and that the east fence, if completed, will inclose about —— acres of additional land and will leave plaintiffs about 1,200 or 1,500 acres in said pasture on the east.

"Seventh. Plaintiffs have placed a large amount of feed on their premises near the northwest corner of said pasture, and plaintiff Crenshaw has placed a large amount of feed near the southwest corner of said pasture on said premises. That the erection of said fence by defendant will cause plaintiffs to haul their said feed quite a distance to reach the said cattle, and will

(37)

also cause plaintiffs to drive their cattle to water.    Plaintiff is feeding about —— cattle for the market and intends using said pasture for the remainder of his time for grazing purposes.

"Eighth.   Defendant has placed his exterior fences on section lines, and has left twenty feet for road, and that his fences are parallel with fences of plaintiffs.   Plaintiffs' fence, in many places, was down so that they could not hold stock.

"Ninth.   Plaintiff says he does not hold under defendant, because he has no contract with him.

"Tenth.   That plaintiff, on the 3d of October, 1901, paid all rents due up to that date to his said lessors, Hedges and others.

"Eleventh.   That said Crenshaw pulled down the fence of defendant and turned his cattle upon the premises inclosed by defendant.   They remained there about twenty-eight hours, and four armed men, in the employment of defendant, turned said cattle out.

"Twelfth.   That the fences erected by the defendant were such as are necessary to inclose said land and cut defendant's land off from other Indian citizens.

"Thirteenth.   That plaintiff's interest in said land does not exceed three thousand dollars.

"Fourteenth.   That defendant is worth, in interest bearing notes, above his exemptions and liability, from forty-eight to fifty thousand dollars.

"I am of the opinion that the erection of the fences by the defendant will cause the plaintiffs damages that cannot be estimated,"

The defendant filed his exceptions to the master's report as follows:

"Now comes the defendant in the above styled and entitled cause, and files these, his exceptions, to the master's report filed herein: First: Defendant excepts to the master's report for the reason that the master erred in refusing to find, in compliance with defendant's first request for a special finding, that plaintiff does not at this time, and has never, according to his own testimony, claimed to hold the land in controversy under the defendant, U. S. Joines; that the master's finding upon that fact is contrary to the evidence. Second: That the master erred in refusing to find, in compliance with defendant's third request for a special finding, that the plaintiffs' lessors do not at this time, and have not since November 4, 1901, owned or controlled or been in possession of the land described in plaintiffs' complaint. Third: The master erred in refusing to find, at the defendant's fourth request for a special finding, that the plaintiffs' contract, by its own terms, seeks to go beyond the time allotment, and is, by its own terms, an incumbrance, on the land after allotment. Fourth: That the master erred in refusing to find, in compliance with defendant's seventh request for a special finding, that there are about two hundred acres of land in cultivation inside of the inclosure claimed by the plaintiffs, which the plaintiffs did not claim, and to the possession of which the defendant is entitled. Fifth: The master erred in refusing to find, in compliance with the defendant's tenth request for a special finding, that the plaintiffs had not, up until the institution of this suit erected any fences upon said land which are not comparatively parallel with other fences on the land. Seventh: The master erred in refusing to find, in compliance with defendant's request for special finding, that the defendant in this case is worth the sum of fifty thousand dollars over and above his debts, liabilities, and exemptions, but found that the defendant was worth forty-eight to fifty thousand dollars in interest-bearing notes.

Eighth: The master erred in finding that the erection of the fence by the defendant will cause the plaintiff to haul their feed a great distance to reach their cattle, and will also cause the plaintiffs to drive their cattle to water, inasmuch as the testimony shows that there is living water in several different places on their premises. Ninth. That the master erred in finding that the erection of the fence by the defendant will cause the plaintiffs damage that cannot be estimated; that said finding is contrary to his finding upon the value of the premises; wherein he found that the plaintiffs' interest in said premises does not exceed the sum of three thousand dollars. Wherefore defendant prays judgment of the court upon these exceptions."

On March 8, 1902, the court found the following judgment: "Be it further remembered, that on the 8th day of March, 1902, this cause came on to be heard before the court upon the exceptions of the defendant to the master's report, and upon the issues of law arising upon the pleadings and the evidence in the cause; and the court, after hearing said exceptions to the master's report, and after hearing the evidence in the cause, and being fully advised in the premises, is of the opinion that the law is against said exceptions, and that the same should be overruled, and that the plaintiffs are entitled to the relief prayed for in their bill in this cause. Whereupon the court overruled the defendant's exceptions to the master's report to which action of the court in overruling said exceptions to the master's report the defendant then and there duly excepted. And thereupon the court rendered judgment upon the issues joined in the pleadings and in the evidence in favor of the plaintiffs, and awarded the injunction prayed for in their bill, to which action of the court in awarding the plaintiffs said injunction the defendant then and there duly excepted."

Defendant thereupon filed a motion for a new trial, which was presented to the court and overruled, defendant excepting,

and, inasmuch as this is a chancery case, it is an unnecessary procedure on the part of the defendant to file such motion, the case coming up upon the record, and therefore the motion for a new trial will not be considered. From the judgment of the court below the defendant prayed and was allowed an appeal, and the case stands in this court upon such appeal with his bill of exceptions.

*Gilbert & Gilbert*, for appellent.

*Morris & Hayes* and *Potter & Potter*, for appellees.

GILL, C. J.   An examination of the evidence and record in this case discloses the fact that the plaintiffs below (appellees) here), by virtue of their lease with certain members of the Choctaw tribes of Indians, were in possession of a large tract of land in the Chickasaw Nation, consisting of about 9,140 acres of land; that such lease was made on the 10th day of April, 1899, and the possession thereunder was taken by said appellees; that the Atoka agreement between the Choctaw and Chickasaw Tribes of Indians was in force; that as a part and parcel of the Atoka agreement the following language appears; "That all contracts looking to the sale or incumbrance in any way of the lands of an allottee, except the sale hereinbefore provided, shall be null and void.   No allottee shall lease his allotment, or any portion thereof, for a longer period than five years, and then without the privilege of renewal.   Every lease which is not evidenced by writing, setting out specifically the term thereof, or which is not recorded in the clerk's office of the United States court for the district in which the land is located, within three months after the date of its execution, shall be void, and the purchaser or lessee shall acquire no rights whatever by an entry or holding thereunder.   And no such lease or any sale shall be valid as against the allottee unless providing to him a reasonable compensation for the lands sold or leased."   The evidence disclosed

in the record shows that of this vast tract of land the appellant acquired a goodly portion subsequent to the execution of this lease to the appellees from the same persons who made the lease above mentioned to the appellees, and during the term of the appellees endeavored to forcibly enter upon said lands and take possession thereof, and did enter thereon and proceed to fence the same by interior fences, changing the boundaries of the pasture lands, and cutting off wells, and depriving the appellees of the pasture leased and the wells thereon, and of their conveniences in feeding stock held by appellees in said pasture lands. The appellant claims that the lease to appellees was absolutely void from the beginning; that it was for the term of five years, and that the Chickasaw law provided that no lease should be valid for a longer term than one year. The Chickasaw law is alluded to in the answer of the defendant, and he attempts to set the same up as a defense. The contract between appellees and their lessors was dated April 10, 1899, and the sale from appellee's lessors to the appellant was thereafter made about November 4, 1901, and that in February of 1902, without the consent of the plaintiffs, defendant entered upon the lands and erected fences inclosing large portions thereof. So that all the transactions in this case were subsequent to the adoption of the Atoka agreement and that section thereof which permitted leases to be made for five years as above quoted. And we hold that a Choctaw or Chickasaw citizen, since the adoption of the Atoka agreement, can, as to agricultural or grazing lands, up to his allotable share in lands in such nation, lease the same for the term of five years, and therefore the agreement between appellees and their lessors was a valid lease, and binding for the term of five years. And we hold further that the transfer of said lands by appellees' lessors to appellant could only be made subject to the rights of appellees in said lands, and that the appellant would have no more rights to enter upon and repossess himself of these lands and improvements than would his grantor;

that, such being the case, his entry upon his tenants' lands, where the rents had been paid and conditions of lease performed as in this case, was unwarrantable, and was a naked trespass, and such trespass as the court might well use its powers to enjoin and prevent.

An inspection of the record discloses no error, and, finding no error therein, the decision of the lower court is hereby affirmed.

CLAYTON and RAYMOND, JJ., concur.