\*ROSS *et al.* v. WRIGHT *et al.*

No. 927.    Opinion Filed June 20, 1911.

1.    **APPEAL AND ERROR**—Review—Necessity of Motion for New Trial.    Where a suit in equity is begun in one of the United States courts for the Indian Territory, and after statehood transferred to the district court of one of the counties of the state, alleged errors of law occurring on the trial may be reviewed in this court without a motion for a new trial.

2.    **INDIANS**—Allotments—Attack on Decisions of Land Department —Pleading and Proof.    One who would attack a patent or decision of the department for a mistake of fact must plead and prove the evidence before the department from which the mistake resulted, the particular mistake that was made, the way in which it occurred, and the fact that, if it had not been made, the decision would have been otherwise and the patent would not have issued to the patentee, before any court can enter upon the consideration of the original issue of fact determined by the department.

3.    **INDIANS** — Cherokee  Allotments — Statutes — "Improvements."    Allotments of lands of citizens of the Cherokee Nation were made under the provisions of an act of Congress, dated July 1, 1902 (32 Stat. L. 716), entitled "An Act to provide for the allotment of the lands of the Cherokee Nation, for the disposition of town sites therein, and for other purposes," and thereunder citizens of the Cherokee Tribe of Indians were entitled to select as their allotments lands upon which were located their improvements, and the setting of posts merely for the purpose of marking or defining

\*Appealed to the Supreme Court of the United States.

a prospective allotment was not sufficient to constitute a lawful improvement.

4.      COURTS—Decisions of U. S. Land Department—Binding Force.
        While a decision of the land department on matters of law are
        not binding on the courts, they should not be annulled unless they
        are clearly erroneous.

(Syllabus by the Court.)

*Error from District Court, Washington County; T. L. Brown, Judge.*

Action by Robert B. Ross and Fannie D. Ross against J. G. Wright and James Day. Judgment for defendants, and plaintiffs bring error. Affirmed.

*Kenneth S. Murchison,* for plaintiffs in error.

*Veasey & Rowland, J. D. Talbott,* and *Kenneth H. Davenport,* for defendants in error.

DUNN, J. This case presents error from the district court of Washington county, an equity suit brought by plaintiffs in error, as plaintiffs, in one of the United States courts for the Indian Territory, sitting at Muskogee. After the cause was begun plaintiffs dismissed as to the defendant J. G. Wright, commissioner, and continued as against James Day. Thereafter, on September 11, 1908, defendant filed his answer to plaintiff's complaint. After the issues were made up the cause was submitted to a referee, who filed his report on the 7th day of November, 1908, containing, in accordance with the order under which he was appointed, his findings of fact. Thereafter, and on the 25th day of February, 1909, the court denied a motion filed by plaintiffs for a judgment against the defendant upon the findings of the referee, and, setting aside the findings and the report, proceeded to hear and determine the cause upon the evidence taken. Thereafter, and on the 3rd day of March, 1909, the court rendered its judgment, finding in all things for the defendant and decreeing that the plaintiffs take nothing by their action. To review the judgment rendered, the cause has been duly lodged in this court.

Counsel for defendant have filed a motion to dismiss the proceeding in error because of the fact that no motion for a new

trial was filed in the court below.  This action being one in equity, and having been begun prior to statehood, was appealable and subject to review on the record made without the filing of a motion for new trial.  *Joines v. Robinson et al.,* 4 Ind. Ter. 556, 76 S. W. 107. · See sec. 1, Schedule to the Constitution (Snyder's Const. p. 380).

Passing directly to the merits of the action and considering those questions only which in our judgment it is essential for us to consider, we will say that the action is brought for the purpose of securing a decree constituting the defendant a trustee to hold title to the land involved, which lies in the Cherokee Nation, for plaintiffs' benefit, and that plaintiffs be held to be entitled to the same as part of their allotments as members of the Cherokee Tribe.  The defendant originally entered the same as his allotment and plaintiffs brought contest, which, on being carried to the Secretary of the Interior, was decided against them and in favor of defendant.  The essential portions of the decision of the Secretary of the Interior are as follows:    .

"There is no serious difference of opinion as to the facts in the case.  The land involved includes two tracts near Bartlesville, one of which contains twenty acres, and the other is a detached piece of land containing ten acres and lies south of the former, but in the same quarter section.  Both tracts were claimed by the firm of Johnstone & Keeler prior to 1902, and constituted a portion of a large tract which was wholly or partially enclosed at one time by wire fence.  The members of the firm divided their holdings between them, and Keeler took that part of the land held by them which included the land in contest.  November 1, 1902, Keeler transferred his interest in the land last referred to, with the improvements thereon, to the contestant by 'bill of sale' witnessed but not acknowledged before a notary.  It is evident that at this time the fencing was pretty well down, and that the land contained no improvements of material value, constituting as it did a portion of the extensive Delaware holdings in which the firm dealt prior to 1902, the extent of their interest in such lands being disclosed in a number of cases.  Contestants do not appear to have made any effort to take possession of the place until the fall of 1903.  Then Mr. Ross, according to his testimony, employed a man to take a load of posts to the place for the purpose of fencing

it, but the lines were not located or the posts set at that time. Apparently nothing further was done until March of the year 1904. Contestant then sent his son, Dr. Charles M. Ross, to look after his interests in the matter. The latter, on March 1, 1904, visited the land, and with the assistance of a surveyor and two other persons located the lines of the land in controversy and indicated the same by setting thereon posts or stakes. ' Dr. Ross testified concerning the work which was done by him and under his supervision that day, and although his testimony was given in the interest of his parents, it shows clearly the unimproved condition of the land at that time * * * * * And, bearing further upon the character of the alleged improvements made by Dr. Ross and his associates March 1, 1904, it is observed that the posts used to inclose this thirty acres were cut and set in about five hours; that some of the posts were about the size of a man's arm and others were mere stakes or poles; that they were placed from fifty to one hundred feet apart, except at the corners, where it appears that five posts were set in comparative proximity. The posts bounding the tracts were not joined by wire or otherwise so as to make a connected fence. No further act of improvement or occupation can be fairly conceded the contestants. Passing now to the testimony of the contestee and his witnesses, it is found that he has lived in the neighborhood of the land for about thirty years; that he alleges that he has claimed it for twenty-five years past, and that he has been cutting timber and posts from it, as well as fuel, all the time. It further appears that when he learned, March 1, 1904, of the efforts made by Dr. Ross and his party to survey and enclose the land he immediately went to Bartlesville and purchased $45.00 of wire, with which he proceeded to fence the tract. In so doing he cut part of the posts and bought part. He was assisted by his son, and the work required about two and a half days. In constructing the fence, two wires were used for the greater part of its length, and the controverted tract was substantially enclosed. In addition, the contestee did that which is also deemed of much importance, but to it no special reference is made in either your office decision or that of the Commissioner to the Five Civilized Tribes. After fencing the land and before filing thereon he erected a three-room house, at a cost of about $250.00, on one of the tracts, and immediately took up his residence therein. The department concludes that the fences upon the tract in question at the time of the alleged purchase from Keeler were not of sufficient consequence or value in connection with the land to be entitled to be classed as improvements; that

the 1.45 acres of cultivation thereon cannot be credited to anyone save the non-citizen Bixler; that the system of posts established by Dr. Ross, March 1, 1904, did not constitute a lawful improvement, and that said posts were merely set for the purpose of marking or defining a prospective allotment. It is further found that the improvements erected by contestee were built possibly a little later than the former, but were of material value to the land; also that he actually entered into possession of the tract * * * * * "

To annul this decision counsel for plaintiffs relies upon two propositions: First, that the facts as they were established before the department were misapprehended; and, second, that in his decision the Secretary of the Interior did not take into consideration the laws of the Cherokee Nation, which he contended provide the rule for the determination of the right to the possession of the lands in controversy as between the contesting parties.

On the first proposition, which is that the department misapprehended the facts, neither plaintiffs' pleading nor proof brings them within the rule applicable where patents are set aside because of the action of the department upon the facts. In such cases it must be pleaded and proved that either through fraud or gross mistake it fell into a misapprehension of the facts proved. *Gonzales v. French et al.,* 164 U. S. 338, 344, 17 Sup. Ct. 102, 41 Law Ed. 458. When attack is made on a patent on this ground, to avoid the department's findings of fact, the party must allege and prove not only that there was a mistake in the finding, but the evidence before the department from which the mistake resulted must be established, to the end that the particular mistake which was made and the way in which it occurred or the fraud, if any, which induced it may be before the court. as the trial which takes place in a case of this character is, in effect, a trial of the contest case itself for the purpose of ascertaining whether it has been correctly determined on the law and facts, the presumption, of course, being that the decision of the land department is correct, and this presumption will obtain until it has been overcome in the manner indicated. *McKenna v. Atherton,* 160 Fed. 547; *James et al. v. Germania Iron Co.,* 107 Fed. 597; *Durango Land & Coal Co. v. Evans et al.,* 80 Fed. 425.

The syllabus in the case of *James et al. v. Germania Iron Co., supra,* is as follows:

"One who would attack a patent or decision of the department for a mistake of fact, however, must plead and prove the evidence before the department from which the mistake resulted, the particular mistake that was made, the way in which it occurred, and the fact that, if it had not been made, the decision would have been otherwise, and the patent would not have issued to the patentee, before any court can enter upon the consideration of the original issue of fact determined by the department."

Speaking to the same point, the Circuit Court of Appeals of the 8th Circuit, Thayer, Circuit Judge, in the discussion of the case of *Durango Land & Coal Co. v. Evans et al., supra,* said:

"The doctrine is too well settled to admit of any controversy that the decisions of that tribunal upon questions properly pending before it can only be annulled when such fraud or imposition is shown to have been practiced as prevented the unsuccessful party in a contest from fully presenting his case, or the officers composing the tribunal from fully considering it, or when such officers have themselves been guilty of fraudulent conduct, or when it is made to appear that, upon the case as established before the land department, the law applicable thereto was misconstrued or misapplied. If fraud is charged as a ground for annulling a decision of the land department, it is not enough that false testimony or forged documents have been employed; but it must be made to appear that such false testimony has affected the decision, and led to a result which otherwise would not have been reached. And inasmuch as the findings of the land department on questions of fact are conclusive, when the charge is that the land department has erred in the decision of a mixed question of law and fact, what the facts were, as laid before and found by the department, must be shown, so as to enable the court to see clearly that the law has been misconstrued."

The court then said:

"These propositions have been so frequently stated and applied that it is hardly necessary to repeat them." (Citing a number of authorities).

In the absence, therefore, of either pleading or proof of the evidence taken on the contest, the question of any misapprehension as to facts is not before us for our consideration.

It is counsel's claim under his second proposition that the rights of the parties should have been determined under section 762 of the Laws of the Cherokee Nation, published by an act of the National Cherokee Council in 1892, instead of the statutes of Congress. This section reads as follows:

"No claim to any place in the Cherokee Nation shall be valid under any act regulating the settlement of the public domain, unless the person locating the same shall, within six months thereafter, make improvements thereon to the value of $50.00, and be in actual possession thereof, or by agent lawfully resident in the Cherokee Nation, whether such place is to be used as a farm, residence, stock ranch, or place of business."

It is the contention of counsel that this law applied in reference to the allotting of the land involved, and that had the department recognized the same, plaintiffs would have been successful in the contest case, and that a failure to recognize this statute is the reason that the land was allotted to their adversary and not to them.

Section 11 of an act of Congress, dated July 1, 1902 (32 Stat. L. 716), entitled "An Act to provide for the allotment of the lands of the Cherokee Nation, and for the disposition of town sites therein, and for other purposes," reads as follows:

"There shall be allotted by the Commission to the Five Civilized Tribes and to each citizen of the Cherokee tribe, as soon as practicable after the approval by the Secretary of the Interior of his enrollment as herein provided, lands equal in value to one hundred and ten acres of the average allottable lands of the Cherokee Nation, to conform as nearly as may be to the areas and boundaries established by the Government survey, which land may be selected by each allottee so as to include his improvements."

It is to be noted that the Secretary of the Interior in his decision concludes that the acts of plaintiffs of March 1, 1904, did not constitute a lawful improvement; that the posts set were set merely for the purpose of marking or defining a prospective al-

lotment, and were not improvements as contemplated in the federal statute. Necessarily to the extent of any conflict between the federal statute and the law of the Cherokee Nation, the former controls, because Congress has plenary legislative authority in all matters relating to the Indian tribes and their affairs. *Lone Wolf et al. v. Hitchcock,* 187 U. S. 553, 47 Law Ed. 299; *Gleason et al. v. Wood,* 28 Okla. 502, 114 Pac. 703. The Cherokee act was a rule established by that nation prior to the congressional allotting act for the control of internal affairs relating to its people and their lands, and therein was recognized a right growing out of a claim or mere location on the public domain. Doubtless, under the operation of this act, where acts were done amounting to the making of a claim or location sufficient to give notice of the intended claim or location and the improvements were thereafter made in accordance with the law, the right would date back to the time of the making of the claim or location. This right was recognized by this act, and it is this, right along with the claim that the posts constituted improvements, which counsel for plaintiffs seeks to have recognized by this court and which he says the Secretary of the Interior ignored. The federal statute and the rules and regulations of the Department of the Interior made thereunder, providing the law and the procedure governing the allotment of the land of this tribe, were passed long after this act, and did not recognize this location right established by the Cherokee law, but provided, as we have seen, that the allotments might be selected by each allottee so as to include—not his claim or location, but—his improvements. If an allottee did acts upon a tract of land which would meet the re-requirements of the statute and sufficient to be denominated improvements, then, if first in time, he would and should be held to be first in right. The construction and holding of the Secretary of the Interior we deem fully justified by the statute, which, we hold, superseded the Cherokee law on the subject; and on the question of whether the posts were improvements, we are not able to say that the conclusion of the Secretary on the evi-

dence before him was wrong, for, while conclusions of law reached by the department on conceded facts are not binding upon the courts, it has been held that they should not be set aside nor annulled unless they are clearly erroneous. *Hand et al. v. Cook et. al.*, 29 Nev. 518, 92 Pac. 3.

We have carefully considered the claims made by plaintiffs in connection with the conclusion reached by the Secretary of the Interior, and, finding no error in the judgment and decision if the trial court concurring in the same, the judgment rendered is accordingly affirmed.

All the Justices concur.