## LYNCH v. HARRIS.

No. 1503. Opinion Filed May 14, 1912.

(124 Pac. 50.)

INDIANS—Indian Lands—Allotment. By reason of section 22 of an act of Congress, approved July 1, 1902 (chapter 1375, 32 U. S. St. at L. p. 716; 1 Kappler's Indian Affairs, Laws and Treaties, p. 789), the Commissioner to the Five Civilized Tribes, upon motion made before him, and the Secretary of the Interior, on appeal from an order of said Commissioner, have power at any time before the issuance of patent to an allottee of the Cherokee tribe of Indians, upon notice to such allottee and after hearing, to cancel and set aside a judgment of the Commissioner in a contest award- ing to the allottee as contestant the lands allotted to him, when such judgment was procured without service of notice of con- test upon the contestee, and without an opportunity given to the contestee to be heard, but upon a false and fraudulent affidavit made by the contestant or one acting for him, showing that such service had been made.

(Syllabus by the Court.)

*Error from District Court, Rogers County;*
*T. L. Brown, Judge.*

Action by John F. Harris, a minor, by J. B. Rutherford, guardian, against Elzira Lynch, a minor, by guardian. Judgment for plaintiff, and defendant brings error. Reversed and re- manded, with directions.

This case originated in the district court of Rogers county. The original plaintiff was John F. Harris, a minor, by John B. Rutherford, his guardian, who is now the defendant in error, but will hereafter be called plaintiff. The original defendant was Elzira Lynch, a minor, who is now the plaintiff in error, but will hereafter be called defendant. Plaintiff sought by his peti-

tion in the court below to have the allotment of certain lands theretofore made to defendant as a member of the Cherokee tribe of Indians declared a nullity, and that whatever ·title defendant may have in and to the lands described in her petition be decreed to be held by defendant in trust for plaintiff, and that a conveyance of the legal title thereto be decreed to plaintiff. The trial in the court below was to the court without the intervention of a jury. After the introduction of evidence by plaintiff, the court overruled defendant's demurrer to plaintiff's evidence, and defendant elected to stand upon her demurrer, and judgment was accordingly rendered for plaintiff as prayed for in his petition. Plaintiff is a duly enrolled citizen by blood of· the Cherokee tribe of Indians, and defendant is an enrolled citizen of the Cherokee Nation as a Cherokee freedman. The land in controversy is located in Rogers county, and formerly constituted a part of the tribal lands of the Cherokee tribe of Indians. On March 28, 1905, defendant, by her mother and natural guardian, Martha Martin, who is also an enrolled citizen of the Creek Nation, selected the land in controversy as a portion of defendant's allotment, to which she was entitled as a member of· the Cherokee tribe of Indians. On April 22, 1905, plaintiff, by his mother and natural guardian, instituted contest proceedings against Elzira Lynch for the land in controversy. This proceeding was instituted before the Commissioner to the Five Civilized Tribes on the ground that plaintiff was the owner of the improvements and in possession of the land at the time the same was selected by defendant as a part of her allotment. On September 19, 1905. that contest was first tried before the Commissioner to the Five Civilized Tribes. The evidence taken at that trial is in the record, and constitutes one of the exhibits to plaintiff's evidence. At the trial, the record shows that defendant, who was contestee in the proceeding before the Commissioner, appeared by her stepfather, Fred Martin, and an attorney by the name of J. D. Cox. The stepfather, Fred ·Martin, is not a citizen of the Cherokee Nation. The Commissioner to the Five Civilized Tribes, upon the evidence introduced at the first trial, awarded to plaintiff the

land in controversy. Notice of this decree of the Commissioner was mailed by registered letter to the mother of defendant by the Commissioner. Neither defendant nor any one acting for her within thirty days after the rendition of the decree in the contest took an appeal therefrom to the Commissioner of the Land Office, but on January 10, 1907, defendant filed a motion with the Commissioner to the Five Civilized Tribes, asking that his decision awarding the land to plaintiff be set aside. This motion was not introduced in evidence in the court below, and the record does not contain the evidence introduced at the hearing on said motion; but the record does disclose that said motion was duly served upon plaintiff, and he had full notice of the hearing thereon. We are advised in part of the contents of said motion by the findings of the Commissioner to the Five Civilized Tribes in his order setting aside his first judgment, which was rendered on July 13, 1907. By this order the judgment in favor of plaintiff in the contest was set aside, and a new trial ordered upon the ground that plaintiff, contestant in that proceeding, by his mother had made a false return of service, and that no notice of a contest upon defendant or her mother and natural guardian, who selected the allotment for her, as prescribed by the rules of the department in contest matters, had ever been served; and it was found that the appearance by Fred Martin, the stepfather, and by the attorney, appearing at the contest in her behalf, was without authority or knowledge of defendant or her mother. Due notice was given to plaintiff, contestant before the Commissioner, of defendant's motion to set aside the judgment of the Commissioner, but no reply was ever filed to said motion, and the same was not resisted. After this motion to vacate and set aside the first judgment of the Commissioner had been granted and after due notice to both parties, a second rehearing in the contest was had before the Commissioner to the Five Civilized Tribes on January 21, 1908, at which time both parties appeared either both in person and by counsel, or by counsel. Upon the evidence introduced at this hearing, which is also made part of plaintiff's evidence in the court below, and a part of the record in this court, the Com-

missioner to the Five Civilized Tribes rendered his decision in favor of the contestee, and awarded to her the land she had theretofore allotted. After a motion for rehearing had been filed, plaintiff appealed to the Commissioner of Indian Affairs, who, on September 2, 1908, rendered a decision affirming the decision of the Commissioner to the Five Civilized Tribes. From this decision an appeal was taken by plaintiff to the Secretary of the Interior, who likewise rendered a decision affirming the decision of the Commissioner of Indian Affairs and of the Commissioner to the Five Civilized Tribes, and awarded the land in controversy to the contestee, defendant here; and it is agreed that a patent, issued by the Tribal authorities and approved by the Secretary of the Interior, has been delivered to defendant.

The foregoing is an epitome of the most important facts in the record. Such other facts as are at all material to a decision of the question presented here will be stated in the opinion.

*Starr & Patten*, for plaintiff in error.

*J. B. Rutherford* and *Parker, Rider & Brown*, for defendant in error.

HAYES, J. (after stating the facts as above). Provision was made by act of Congress approved July 1, 1902 (32 U. S. St. at L. p. 716; 1 Kappler's Indian Affairs, Laws & Treaties, p. 787), for the allotment in severalty of the lands of the Cherokee Nation or tribe of Indians to the enrolled members thereof. Section 9 of this act provides for an appraisement of all the lands belonging to the tribe. Section 11 provides that there shall be allotted to each enrolled citizen of the tribe lands equal in value to 110 acres of the average allottable lands of the nation, and in making the allotments each Indian is entitled to select lands which will include his improvements. Section 69 provides that there shall be no contest instituted against the selection of any allotment after the expiration of nine months after the date of the original selection of such allotment by or for any citizen of the tribe.

Section 21 directs that:

"Allotment certificates issued by the Dawes Commission shall be conclusive evidence of the right of an allottee to the

tract of land described therein, and the United States Indian agency shall, under the direction of the Secretary of the Interior, upon the application of the allottee, place him in possession of his allotment.    *    *    *"

Section 22 reads:

"Exclusive jurisdiction is hereby conferred upon the Commission to the Five Civilized Tribes, under the direction of the Secretary of the Interior, to determine all matters relative to the appraisement and the allotment of lands."

And it is further provided by section 65 that:

"All things necessary to carry into effect the provisions of this act, not otherwise herein specifically provided for, shall be done under the authority and direction of the Secretary of the Interior."

Although more than nine months had expired after the date of the original selection of this allotment by defendant before the motion to vacate the first judgment rendered by the Commissioner to the Five Civilized Tribes was filed, there is an absence of any evidence to show that a certificate of allotment had been issued to plaintiff, except that the United States Indian agent, prior to filing the motion to vacate, had under the direction of the Secretary of the Interior placed plaintiff in possession of the allotment.  But we do not regard it material, in so far as it affects the only question presented by this proceeding, whether the allotment certificate had been issued or not to plaintiff before the motion to vacate was filed, for, if nine months had expired from the original selection of the allotment, the time within which to file a contest had elapsed, and plaintiff was entitled to the certificate of allotment; and, if he was vested with an equitable right and title in and to the allotment, the certificate of allotment, when issued, constitutes only evidence of his right and authority to the United States Indian agent to place the allottee in possession.  The equitable estate vests, not by reason of the issuance of such certificate, but by reason of the fact that the allottee is an enrolled member of the tribe, entitled to allotment, has selected it in the manner provided by law; the time for filing his contest having expired and having done all other things required by the statute of him to entitle him to any specific

tract of land as his allotment. Such certificate does not convey to him the legal title; for, by section 58 of the act, it is provided that the Secretary of the Interior shall furnish the principal chief of the tribe with blank patents necessary for all conveyances provided for by the act; and when any citizen has received his allotment or when any allotment has been so ascertained that title should, under the provisions of the act, be conveyed, the chief shall thereupon proceed to execute and deliver to the allottee a patent, conveying all the right, title, and interest of the Cherokee Nation and of all other citizens in and to the land embraced in the allottee's allotment certificate.

Section 59 reads:

"All conveyances shall be approved by the Secretary of the Interior, which shall serve as a relinquishment to the grantee of all the right, title, and interest of the United States in and to the lands embraced in his patent."

By section 60 it is provided that the acceptance by any allottee of a patent to his allotment shall be deemed an assent to the allotment and to the conveyance of all the lands of the tribes as provided for in the act and a relinquishment of all his right and title in and to the same, except in the proceeds of lands reserved from allotment. There is no specific provision in the act that the allotment certificate shall convey any title. If it had been intended that the issuance of a certificate of allotment should operate to convey the legal title to an allotment, it would not have been provided by the foregoing sections that such right and title should be conveyed by patent, or that such patent should convey the lands embraced in the allottee's allotment certificate. *Michigan Land & Lumber Co. v. Rust,* 168 U. S. 589, 18 Sup. Ct. 208, 42 L. Ed. 591. Acting under section 65, *supra,* of the act, the Commissioner to the Five Civilized Tribes, under the direction and supervision of the Secretary of the Interior, promulgated rules to govern the institution and prosecution of contests before the Commissioner against the selection of allotments. These rules require that at least thirty days' notice shall be given of all hearings before the Commissioner, unless by written consent an earlier day shall be agreed upon. They also

require that all notices of contest or summons shall be made upon blanks prepared and supplied by the Commissioner; and that personal service of such notice shall be made in all cases where the party to be served is a resident of the Indian Territory. Rule 7 reads as follows:

"If the person to be personally served is an infant or a person of unsound mind, service shall be made by delivering a copy of the notice and summons to the guardian of such infant or person of unsound mind, if there be one. If there be none, then by delivering a copy to the person having the infant or person of unsound mind in charge, and also to the person who made the selection for such infant or person. And if the contestee is a prisoner, convict, aged or infirm person, or a soldier or sailor of the United States on duty outside of the Indian Territory, service shall be made as herein otherwise provided, and a copy of the notice and summons shall also be served on the person who made the selection for such prisoner, convict, aged or infirm person, soldier or sailor."

Under the foregoing rule, where the contestee is an infant or person of unsound mind, service of notice of contest is required to be made upon the person having the infant in charge, and also upon the person who made the selection for such infant. It appears that the return of service made by the mother of plaintiff before the original hearing showed service of the notice of contest to have been made upon the mother of defendant; that such affidavit of service by plaintiff's mother was false and a fraud upon the department is not seriously questioned in this proceeding, and the finding by the Commissioner upon the motion to vacate that no such service was had and that the stepfather and attorney who had appeared at the original trial were without authority to do so, and did so without the consent of the mother and minor, is conclusive upon this court, for the evidence at the hearing upon the motion to vacate and set aside the original order of the Commissioner is not preserved in the record before us. *Ross et al. v. Wright et al.*, 29 Okla. 186, 116 Pac. 949. Nor was any authority vested in the stepfather by statute or rule of the Commissioner to represent defendant in the contest. Section 70 of the act provides:

"Allotments may be selected and homesteads designated for minors by the father or mother, if citizens, or by a guardian or curator, or the administrator having charge of their estate, in the order named. * * *"

Under this provision of the statute, the stepfather was without any authority in the premises, both because he is not the father of defendant, nor is he a citizen of the tribe. He had no authority by virtue of rule 7, *supra*, of the Commissioner, because he was not in charge of defendant, nor was he the person who selected her allotment; but rule 20 of the department provides:

"Motions for reinstatement, after dismissal as provided in rule 14, and for rehearing or review, must be filed within twenty days from service of notice of the final order or decision in case of personal service of said notice and within thirty days in case of service of said notice by registered letter, said motion first having been served on the opposite party or his attorney, either personally or by registered letter. The party on whom the motion is served will be allowed the same length of time after service of motion in which to file a reply, service thereof first having been had on the opposite party, or his attorney, either personally or by registered letter."

And rule 22 reads:

"In case of failure to file a motion to reinstate, or for rehearing or review, within the time prescribed by rule 20 the case will be regularly closed."

Plaintiff's sole contention for reversal of this cause and his right to recover is based upon the foregoing two rules of the Commissioner, and is that each of the officers of the department before whom the contest was heard or any proceeding was taken after the expiration of thirty days after the decree of the Commissioner to the Five Civilized Tribes in his favor was without jurisdiction to act; that is, that the Commissioner in the first instance and the Secretary of the Interior on appeal are without power to set aside the first judgment of the Commissioner in his favor. This contention is not sound. In the first place, we do not think that the foregoing rules relied upon by plaintiff have any application to his case. Those rules contemplate that there has been a hearing of which both parties to the contest have had notice and an opportunity to be heard; and that, although in

fact one party on account of his voluntary absence may not have been heard in fact, in law he has been heard, because given an opportunity to be heard in the manner prescribed by the rules of the department. When a hearing of this character has occurred, these rules then apply. But in the case at bar defendant had never had a hearing. The Commissioner had never obtained jurisdiction of her person to try this controversy. The judgment rendered against her by the Commissioner was in plain violation of the rules governing it in contests, secured by the fraud of plaintiff's mother acting for him. We find no rule promulgated that in our opinion prescribes the procedure to be pursued by a party aggrieved in this manner for remedy before the Commissioner or the Department of the Interior; but the Commissioner, acting under the direction or supervision of the Secretary of the Interior, or the Secretary of the Interior, in the absence of any such rule, was not without authority to grant relief to defendant from the fraud that had been perpetrated against her and against the department. The identical language of section 22, *supra,* constitutes section 24 of the Supplemental Agreement between the Commission to the Five Civilized Tribes and the Chickasaw and Choctaw tribes of Indians, and the jurisdiction of the Commission conferred by this provision upon the ·Commission to the Five Civilized Tribes under the direction of the Secretary of the Interior and the effect of the Commission's action in the first instance and of the Secretary of the Interior on appeal, or in a direct proceeding before him in the allotment of lands to the members of said tribe, is the same as the jurisdiction and the effect of the action of the Land Department of the United States in the disposition by patent of the public lands within its control. *Sorrels v. Jones et al.,* 26 Okla. 569, 110 Pac. 743; *Wallace et al. v. Adams et al.,* 143 Fed. 716, 74 C. C. A. 540. The power of the Public Land Department and of the Secretary of the Interior in his supervisory control over same to determine upon proper notice to the parties interested all questions of equitable right and title before the legal title has passed from the government is well settled by a long line of decisions from

the Supreme Court of the United States. The character and extent of that power is well defined in *Cornelius v. Kessel,* 128 U. S. 456, 9 Sup. Ct. 122, 32 L. Ed. 482, by Mr. Justice Field in the following language:

"The power of supervision possessed by the Commissioner of the General Land Office over the acts of the register and receiver of the local land offices in the disposition of the public lands undoubtedly authorizes him to correct and annul entries of land allowed by them, where the lands are not subject to entry, or the parties do not possess the qualifications required, or have previously entered all that the law permits. The exercise of this power is necessary to the due administration of the Land Department. If an investigation of the validity of such entries were required in the courts of law before they could be canceled, the necessary delays attending the examination would greatly impair, if not destroy, the efficiency of the department. But the power of supervision and correction is not an unlimited or an arbitrary power. It can be exerted only when the entry was made upon false testimony or without authority of law. It cannot be exercised so as to deprive any person of land lawfully entered and paid for. By such entry and payment the purchaser secures a vested interest in the property and a right to a patent therefor, and can no more be deprived of it by order of the Commissioner than he can be deprived by such order of any other lawfully acquired property. Any attempted deprivation in that way of such interest will be corrected whenever the matter is presented so that the judiciary can act upon it."

Other cases supporting this rule are *Lee v. Johnson,* 116 U. S. 48, 6 Sup. Ct. 249, 29 L. Ed. 570; *Knight v. U. S. Land Association,* 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974; *Pierce v. Frace,* 157 U. S. 372, 15 Sup. Ct. 635, 39 L. Ed. 737; *Parsons v. Venzke,* 164 U. S. 89, 17 Sup. Ct. 27, 41 L. Ed. 360; *Brown v. Hitchcock,* 173 U. S. 473, 19 Sup. Ct. 485, 43 L. Ed. 772; *Hawley et al. v. Diller,* 178 U. S. 476, 20 Sup. Ct. 986, 44 L. Ed. 1157; *Love v. Flahive,* 205 U. S. 195, 27 Sup. Ct. 486, 51 L. Ed. 768; *Freese v. Rusk et al.,* 54 Kan. 274, 38 Pac. 255; *Gage v. Gunther,* 136 Cal. 338, 68 Pac. 710, 89 Am. St. Rep. 141; *Jones v. Meyers,* 2 Idaho, 793, 26 Pac. 215.

Speaking of the control of the exercise of this power by the Secretary of the Interior by established rules of the depart-

ment in *Knight v. U. S. Land Association, supra,* it was said:

"It makes no difference whether the appeal is in regular form according to the established rules of the Department, or whether the Secretary on his own motion, knowing that injustice is about to be done by some action of the Commissioner, takes up the case and disposes of it in accordance with law and justice. The Secretary is the guardian of the people of the United States over the public lands. The obligations of his oath of office oblige him to see that the law is carried out, and that none of the public domain is wasted or is disposed of to a party not entitled to it. He represents the government, which is a party in interest in every case involving the surveying and disposal of the public lands."

In *Pierce v. Frace, supra,* plaintiff had filed his declaratory statement for a tract of land under the pre-emption laws of the United States. He had made his final proof and his cash entry had been allowed by the register and receiver of the local land office. Thereafter defendant filed in the office of the Commissioner of the General Land Office, and afterwards in the local land office, his affidavit that plaintiff had not so established his residence on the land, that he had failed to improve the same and cultivate the same as provided by law, and that the cash entry had been procured by fraud. The Commissioner of the General Land Office ordered a hearing on the charges before the local land office, and upon such hearing the entry of plaintiff was canceled, and defendant was permitted to file. After patent issued to defendant, plaintiff sought to have defendant declared as holding the title in trust for plaintiff, and contended that the determination of his right to the land by the local land office and that he had complied with the law entitling him to patent was a judicial determination from which no appeal was allowed by statute or rule and was therefore a final determination of his rights. The decision of the court sustains the action of the department, and holds that the Secretary of the Interior had jurisdiction to review the judgment of the local land officers and to order the entry, shown to be fraudulent, to be canceled.

*Garfield v. Goldsby,* 211 U. S. 249, 29 Sup. Ct. 62, 53 L. Ed. 168, and *Ballinger v. U. S. ex rel. Frost,* 216 U. S. 240, 30

Sup. Ct. 338, 54 L. Ed. 464, are relied upon by plaintiff in this action, but they are not in point. In the Goldsby case the Secretary of the Interior had, without notice and an opportunity to be heard, struck Goldsby's name from the rolls of the Chickasaw Nation or tribe of Indians, which had theretofore been approved by the Dawes Commission and the Secretary of the Interior. In the Frost case, after a tract of land had been allotted to her, the period for contest having expired and the certificate of allotment issued under the treaties regulating the allotment of lands of the citizens of said nation, the land allotted to her was segregated by the Secretary of the Interior for town-site purposes and her allotment canceled. Her action to compel, by mandamus, the Secretary of the Interior to cause to be issued to her a patent to said lands was sustained. The difference in these cases is apparent. In the Goldsby case the action of the Secretary of the Interior complained of was arbitrary and denied to Goldsby due process of law, in that the Secretary of the Interior failed to give him notice and an opportunity to be heard. In the Frost case, after notice of hearing and an apportunity to be heard, the Secretary acted arbitrarily, in that he canceled her allotment, not because any mistake of law had been made or any fraud practiced, but after the allottee had in good faith complied with all the requirements of the law, entitling her to the allotment, and a certificate had been issued as evidence of that fact, the Secretary of the Interior canceled her allotment, and attempted to give it to other persons. The supervisory power of the Secretary of the Interior over the Land Department and the officers therein in the administration of the public lands of the government or of the tribal lands under these acts of Congress can neither be exercised arbitrarily by acting without notice nor without authority of law after notice. In the case at bar plaintiff was given notice of the motion and the hearing thereon to set aside and vacate the first judgment of the Commissioner in his favor, which appears not to have been contested by him. Thereafter notice of a hearing of the contest was given, and plaintiff appeared by counsel at that hearing. Upon the evidence introduced, the Commissioner

found that plaintiff was not the owner of the improvements or in possession of the land at the time defendant allotted same, and that he was not entitled as against defendant to select said lands as his allotment. This decree of the Commissioner was thereafter affirmed by the Commissioner of Indian Affairs and the Secretary of the Interior. A copy of the evidence introduced at this hearing was introduced as evidence in the trial in the court below, and forms part of the record here. There is some conflict in that evidence; but, in the absence of fraud, imposition, or mistake, the findings of fact by the Commissioner to the Five Civilized Tribes, approved by the Secretary on appeal, are conclusive upon this court. *Love v. Flahive, supra; Ross v. Stewart,* 25 Okla. 611, 106 Pac. 870. We think *Sorrels v. Jones et al., supra,* practically decisive of the question presented by this proceeding; but in view of the fact that two other cases are now pending in this court upon a similar state of facts, and of which our decision in this case will be decisive, we have thought best to review the authorities applicable to the questions at somewhat more length than was done in *Sorrels v. Jones et al., supra.*

It follows from the views already expressed that the judgment of the trial court should be reversed and the cause remanded, with direction to enter judgment in accordance with this opinion.

TURNER, C. J., and WILLIAMS, KANE and DUNN, JJ., concur.