## E. G. HOLMES v. W. E. PRAUN and Others.[1]

July 30, 1915.

Nos. 19,325—(50).

**Indian — descent of land allotted to Chippewa.**

   The probate courts of this state have no jurisdiction to determine heirship and descent of land allotted to a Chippewa Indian upon the White Earth Reservation, under the acts of Congress of February 8, 1887, and January 14, 1889, where the allottee dies before the approval of his allotment.

Action of ejectment in the district court for Mahnomen county. The answer alleged that defendant Praun was the owner in fee of the premises described and defendant Larson was in possession thereof under a lease from defendant Praun. The case was tried before Grindeland, J., who made findings and ordered judgment in favor of defendants. From an order denying his motion for a new trial, plaintiff appealed. Affirmed.

*Johnston & Dennis,* for appellant.

*Clayton C. Cooper,* for respondent.

[1] Reported in 153 N. W. 951.

HALLAM, J.

This is an action in ejectment involving 80 acres of land in Mahnomen county. Both parties claim title under Henry Hutchinson, a Chippewa Indian child of the White Earth Reservation. The land was allotted to Hutchinson under the allotment act of Congress of February 8, 1887, which is general, and the act of January 14, 1889, which relates especially to this reservation. In 1895 Hutchinson died. On February 26, 1901, a schedule of allotments, including this one, was deposited in the general land office, and on February 28, 1901, said schedule was approved by the secretary of the interior. On December 30, 1902, a trust patent was issued in the name of Hutchinson. On August 17, 1904, Anna Hutchinson, the mother of Henry, and an Indian husband, not the father of Henry, claiming to be sole heirs of Henry, conveyed the land, with the approval of the secretary of the interior, to one who by mesne conveyances transmitted the title to defendant Praun. Defendant Praun is now in possession through his tenant, defendant Larson. May 11, 1910, an Indian, Oke-tah-cumig, and his wife, not Henry's mother, deeded the land to plaintiff. On July 7, 1910, a decree of heirship and descent was procured from the probate court of Mahnomen county adjudging Oke-tah-cumig to be the father and the sole heir of deceased and the owner of this land.

We need consider but one question of law on this appeal. Plaintiff must succeed on the strength of his own title. The title of plaintiff is predicated solely on a decree of a probate court of this state adjudging that the Indian Oke-tah-cumig was the sole heir of the Chippewa Indian Henry Hutchinson, and entitled to his allotment. We are of the opinion that the probate court had no jurisdiction to determine who was entitled to the allotment of this deceased Chippewa Indian. Plaintiff also offered to prove on the trial of this action that Oke-tah-cumig, his grantor, was in fact heir of the deceased Indian. This was also incompetent. If any state court has jurisdiction to determine such a matter it is the probate court. We are of the opinion that no state court has any such jurisdiction.

Prior to February 22, 1855, the territory comprising the White Earth Indian Reservation was Indian country and was owned by

the Chippewa Indians of the Mississippi in their tribal capacity. There followed a series of treaties and statutes, the aim and purport of which were, first, to make part of the Indian lands available for "White" settlement, and, second, to break up tribal relations and tribal ownership and establish private ownership in severalty by the Indians themselves, and to vest them with the rights and charge them with the duties of American citizens. Matter of Heff, 197 U. S. 488, 25 Sup. Ct. 506, 49 L. ed. 848. It is not necessary to review these treaties and statutes in detail. Their history is found in Selkirk v. Stephens, 72 Minn. 335, 75 N. W. 386, 40 L.R.A. 759; State v. Cooney, 77 Minn. 518, 80 N. W. 696; and Vachon v. Nichols-Chisholm Lumber Co. 126 Minn. 303, 144 N. W. 223, 148 N. W. 288. For present purposes it is sufficient to say that the theory of them is that the Indians were to give up their reserved lands to the United States government and receive individual allotments, and that each Indian was entitled to an allotment as a matter of right.

The general Indian allotment act of February 8, 1887 (24 St. 388), provided in section 1 that:

"In all cases where any tribe or band of Indians * * * shall * * * be located upon any reservation * * * the President of the United States * * * is authorized" to allot to such Indians located thereon, certain land.

Section 3 provided that allotments were to be made by special agents appointed by the President for such purpose.

Section 5 provided that "upon the approval of the allotments * * * by the secretary of the interior, he shall cause patents to issue therefor, * * * which patents shall * * * declare that the United States does and will hold the land thus allotted, for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the State * * * where such land is located. * * * *Provided,* That the law of descent and partition in force in the State or Territory where such lands are situate shall apply thereto after patents therefor have been executed and delivered. * * *"

The act of January 14, 1889 (25 St. 642), known as the Nelson Act, applies the general allotment act of 1887, with some modification not important here, to the Chippewa Indians of Minnesota and their reservation lands.

An act approved February 28, 1891 (26 St. 794), provides "that for the purpose of determining the descent of land to the heirs of any deceased Indian under the provisions of the fifth section of said act, whenever any male and female Indian shall have cohabited together as husband and wife according to the custom and manner of Indian life the issue of such cohabitation shall be, for the purpose aforesaid, taken and deemed to be the legitimate issue of the Indians so living together, and every Indian child, otherwise illegitimate, shall for such purpose be taken and deemed to be the legitimate issue of the father of such child."

These laws were enacted prior to the death of Henry Hutchinson. Heirship must accordingly be determined by taking into account "the law of descent  *  *  *  in force in the state," and this Federal Act as well.

An act approved May 27, 1902 (32 St. 245, 275), provides "that the adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation has been or shall be issued for lands alloted to him may sell and convey the lands inherited from such decedent,  *  *  *  subject to the approval of the Secretary of the Interior, and when so approved shall convey a full title to the purchaser  *  *  *"

An act of June 21, 1906 (34 St. 325), and amendment of March 1, 1907 (34 St. 1015, 1034), known as the Clapp amendment, removed "all restrictions as to sale  *  *  *  for allotments within the White Earth Reservation  *  *  *  held by adult mixed-blood Indians," and declared the trust deeds to pass the title in fee simple.

We do not regard these later acts as vital to this case, first, because the title of deceased to this land is to be determined by the laws at the date of his death, and, second, because the question here is not so much what was the nature of the title or interest the allottee had as what tribunal has jurisdiction to determine the disposition of that interest after his death.

As early as 1870 it was held in United States v. Shanks, 15 Minn. 302 (369), that the probate courts of the state had no jurisdiction over the estate of a deceased tribal Indian, to whom part of the reservation had been assigned. If any such jurisdiction exists now, it must be by virtue of some Indian treaties or Federal statutes passed since that time. There are no such treaties or statutes which in terms or by implication give such jurisdiction.

An act approved August 15, 1894 (28 St. 286, 305), provides "that all persons who are in whole or in part of Indian blood or descent who are entitled to an allotment of land under any law of Congress, or who claim to be so entitled to land under any allotment Act or under any grant made by Congress, or who claim to have been unlawfully denied or excluded from any allotment or any parcel of land to which they claim to be lawfully entitled by virtue of any Act of Congress, may commence and prosecute or defend any action, suit, or proceeding in relation to their right thereto, in the proper circuit court of the United States."

In McKay v. Kalyton, 204 U. S. 458, 27 Sup. Ct. 346, 51 L. ed. 566, the United States Supreme Court, in construing that statute in connection with previous legislation, settled the question of jurisdiction involved in this case. Joe Kalyton had been allotted a tract of land in the Umatilla Indian Reservation. He died after the issuance of the trust patent. The case was a controversy as to heirship, between plaintiff, claiming to be a daughter of deceased and defendant, a sister of deceased. The state court of Oregon undertook to determine the question of heirship. The pertinent statutes were much the same as here. It was held that the United States still retained such control over allotments to Indians as was essential to cause the alloted land to enure during the trust period for the sole use and benefit of the allottees; that, except as provided by acts of Congress, controversies involving the determination of title to Indian allotments during the trust period are not cognizable by any court, state or Federal, but by the secretary of the interior; that by the act of August 15, 1894, above cited, the exclusive Federal control over the subject was continued; that that act delegated to the Federal courts the power to determine questions involving the rights

of Indians to allotments, and the United States by that act consented to submit its interest in the trust estate to the result of a decree of the courts of the United States; but that it did not confer upon the state courts authority to pass upon Federal questions over which, prior to 1894, no court had any authority, and that the state court of Oregon was without jurisdiction to entertain the controversy. See also Smith v. Smith, 140 Wis. 599, 123 N. W. 146, Y-ta-tah-wah v. Rebock (C. C.) 105 Fed. 257. It is impossible to distinguish McKay v. Kalyton, supra, from this case. In fact it goes farther than is necessary here. The facts are that the allottee died before the issuance of the trust patent and before the approval of the allotment. We hold, following McKay v. Kalyton, that the probate court of Mahnomen county had no jurisdiction to determine who was entitled to receive from the United States the land alloted to Henry Hutchinson. Plaintiff has accordingly made no proof of title and his case fails.

Order affirmed.