## C. A. BAKER AND OTHERS v. J. K. McCARTHY.[1]

### February 20, 1920.

### No. 21,496.

**Indian — jurisdiction of probate court over their estates since Clapp amendment.**

The Clapp amendment of June 21, 1906, as amended March 1, 1907, emancipated adult mixed-blood Indian allottees from Federal guardianship, and by implication gave to the probate courts of this state jurisdiction to administer the estates and determine the heirs of such mixedblood allottees, whether death occurred before or after the passage of the amendments. Holmes v. Praun, 130 Minn. 487, distinguished.

Action in ejectment in the district court for Becker county to recover possession of certain land. The case was tried before Parsons, J., who made findings and dismissed the action. From the judgment dismissing the action, entered pursuant to the findings, plaintiffs appealed. Reversed.

[1]Reported in 176 N. W. 643.

*R. J. Powell,* for appellants.
*Johnston & Carman,* for respondent.

HALLAM, J.

Ejectment to recover land in Becker county, formerly in the White Earth Indian Reservation. Before 1897, Alexander Roy, an adult mixed-blood Indian, made application to have this land allotted to him. The application was approved by the secretary of the interior, and in 1902 there was issued a so-called trust patent in the name of Alexander Roy.

Roy died in November, 1897. In 1914, the probate court of Becker county made a decree, determining the heirs of Roy, and assigning this land to them. Plaintiffs claim by purchase from these heirs. If the probate court had jurisdiction over the estate of Roy, plaintiff's title is good. If not, his title fails. The trial court determined the case adversely to plaintiff and dismissed the action.

Holmes v. Praun, 130 Minn. 487, 153 N. W. 951, involved the question whether a state probate court had jurisdiction to determine heirship of a minor Indian. It was held, following McKay v. Kalyton, 204 U. S. 458, 27 Sup. Ct. 346, 51 L. ed. 566, that the court had no jurisdiction, but that the sole repository of jurisdiction in such a case was the secretary of the interior.

Nothing was decided as to jurisdiction in case of adult mixed-bloods. Nothing of the kind was before the court for decision. Whether the rule would be the same or different in such a case was neither considered nor decided. There was no occasion to do either.

Since the decision of Holmes v. Praun, the secretary of the interior has ruled that in the case of adult mixed-bloods, the interior department has no jurisdiction to determine heirship. In re Estate of Robert Fairbanks, and In re Estate of Catherine Fairbanks, October 19, 1918.

This ruling follows the opinion of the attorney general, to the effect that "where the title has passed to an adult mixed-blood Indian, now dead, or to the heirs of a deceased adult mixed-blood, all questions of the title by inheritance are vested in the proper state courts having jurisdiction of the subject matter and the parties under state laws." Opinion

F. J. Kearful, Assistant Attorney General to Secretary of the Interior, December 24, 1917.

The basis of this opinion was that the Clapp amendment of June 21, 1906 (34 St. 353), as amended by the Clapp amendment of March 1, 1907 (34 St. 1015), removing all restrictions as to sale, encumbrance or taxation, from allotments within the White Earth Reservation "heretofore or hereafter held by adult mixed-blood Indians," and declaring that the trust deeds, "heretofore or hereafter executed by the Department for such allotments," shall pass the title in fee-simple, fully "emancipated" the adult mixed-blood Indians, if living, and their heirs and estate, if the allottees were then dead, from the Federal guardianship and the consequent jurisdiction of the interior department, with the result that jurisdiction vests in the state courts.

This position was a reversal of the position previously taken by the secretary of the interior, and a reversal of the opinion previously expressed by the attorney general, on which the former position of the secretary of the interior was based. In a report of the secretary of the interior, transmitted to the House Committee on Indian affairs in August, 1916, upon a bill then pending in Congress, which was intended to give jurisdiction in such cases to the probate courts of this state, there appears the opinion of the attorney general, that all proceedings that have been had in the probate courts of Minnesota, to determine the heirs and administer the estates of deceased Indians, "except in cases where fee-simple patents were issued * * * were all unquestionably void for lack of jurisdiction," and the secretary of the interior expressed the opinion that the "change" in jurisdiction contemplated by the then pending bill would be "a decided step backwards in the administration of Indian affairs." 3 House Reports Misc. 64th Congress (1st session) 1915, 1916. Report 993, August 15, 1916.

We are mindful of the fact that this is a Federal question, and that the department of the interior is distinctively the guardian of the Indian, and when this department relinquishes all claim to jurisdiction, or distinctly repudiates its own jurisdiction, assuming the position that jurisdiction exists in the state courts, it would require a very strong case to warrant the state courts in refusing to exercise jurisdiction, thereby leaving those who have rights to assert, and who are entitled to a forum in

which to assert them, without any tribunal willing to give them audience. We do not think any such strong case exists. We are content to accept the latest ruling of the Federal departments as law, until the Federal courts shall hold otherwise, and to hold that the effect of the Clapp amendments converting the trust title of mixed-blood Indians into fee-simple title, was to emancipate mixed-blood Indians from Federal guardianship and jurisdiction, so far as concerns their allotments, and to remit them to the jurisdiction of the state courts.

We intended to hold nothing different in Holmes v. Praun. Perhaps we misled the trial court by one remark in the opinion in that case, to the effect that the Clapp amendments were not vital to that case, because "the title of deceased * * * is to be determined by the laws at the date of his death," and because the question at issue was "not so much what was the nature of the title or interest the allottee had, as what tribunal had jurisdiction to determine the disposition of that interest after his death." It was perfectly true that there was nothing in the Clapp amendments at all vital to the case of jurisdiction over the estate of a minor Indian, such as the deceased in that case. Had there been any suggestion of a distinction in case of adult mixed-bloods, our language would probably have been more guarded. It is usually true that the title of a deceased must be determined by the law in force at the date of his death. But no doubt Congress, in disposing of Government land, may enlarge the title in favor of the estate, after the owner's death. The Clapp Amendment of 1907 is plainly retrospective.

Congress had the constitutional power after the death of an allottee to change the jurisdiction in which his estate should be administered. Bond v. United States, 181 Fed. 613; Hallowell v. Commons, 239 U. S. 506, 36 Sup. Ct. 202, 60 L. ed. 409. This might be done expressly or by implication. We think it is the general view that the issuance of a fee-simple patent operates, by implication, to emancipate the Indian from Federal guardianship and jurisdiction. Luck Land Co. v. Dickson, 132 Minn. 396, 157 N. W. 655, affirmed 242 U. S. 371, 37 Sup. Ct. 167, 61 L. ed. 371. We hold that the same result was accomplished by the provision of the Clapp amendments converting the trust deeds theretofore issued in the case of adult mixed-bloods into instruments of fee-simple title, see United States v. Waller, 243 U. S. 452, 37 Sup. Ct. 430, 61 L.

ed. 843, and that the Clapp amendments by implication gave to the probate courts of this state jurisdiction to administer the estates and determine the heirs of an adult mixed-blood allottee, whether death occurred before or after these amendments.

Judgment reversed.