### BISEK v. BELLANGER et al.

(District Court, D. Minnesota, Sixth Division February, 1925.)

**1. Indians ☞13—Cancellation of patent to mixed-blood Indian held unauthorized.**

Where mixed-blood Indian, enrolled as such under Act Cong. June 30, 1913, was allotted land under Nelson Act, and given title in fee, with power to sell and convey, by Clapp Amendments, and under Act Cong. May 8, 1906, became subject to laws of state wherein he resided, held that, after death of such Indian after he became 21 years of age and alienation by his father, his heir at law, cancellation of the patent was not authorized, under Act Cong. April 23, 1904.

**2. Indians ☞13—That original allotment was fraudulently induced does not defeat superior rights of bona fide purchaser of land.**

Where land allotted to mixed-blood Indian under Nelson Act and Clapp Amendments descended to heir, and passed into hands of bona fide purchaser, held, rights of purchaser were superior to those of government, notwithstanding original allotment and trust deed were induced by fraud.

**3. Indians ☞13—Cancellation of patent, without notice or opportunity for hearing to persons interested, unwarranted.**

Under Nelson Act and Clapp Amendments, where land allotted to mixed-blood Indian descends to heir, who conveyed to bona fide purchaser, there can be no cancellation of patent under Act Cong. April 23, 1904, without notice to person actually interested and opportunity for hearing.

4. Indians ⊙⟶13—Validity of attempted cancellation of patent held properly litigated in action to determine adverse claims.

In action to determine adverse claims to lands purchased from heir of Indian allottee, validity of attempted cancellation of patent, pursuant to Act Cong. April 23, 1904, may properly be litigated.

At Law. Action by John F. Bisek against Charlotte Bellanger and others, to determine adverse claims to certain lands. Decree for plaintiff.

L. W. Prendergast, of Le Sueur Center, Minn., and Joseph N. Moonan, of Waseca, Minn., for plaintiff.

C. C. Cooper, of Mahnomen, Minn., for defendants Bellanger.

Louis D. Davis, of Waubun, Minn., for defendants Luck Land Co. and Waller.

P. F. Schroeder, of Detroit, Minn., and F. D. Beaulieu, of White Earth, Minn., for defendants Boudreau and heirs of George Libby.

Marshall A. Spooner, of Bemidji, Minn., for defendants Arbitt and wife.

John F. Scott and John E. Martin, both of St. Paul, Minn., for defendant Federal Land Bank of St. Paul.

Lafayette French, Jr., U. S. Atty., of St. Paul, Minn., and W. C. Preus, Asst. U. S. Atty., of Minneapolis, Minn., for the United States.

CANT, District Judge. [1] Harry Tibbetts, was a mixed-blood Chippewa Indian. On December 30, 1902, the United States issued to him a trust patent, so-called, covering the 80 acres of land here in controversy. This land was alloted to him under the provisions of Nelson Act Jan. 14, 1889 (25 Stat. 642). Act May 8, 1906 (34 Stat. 182), provides that all Indian allottees, with patent in fee to their lands, shall be subject in all things to the laws of the State wherein they reside. This would include the laws with respect to the probate of estates. On June 21, 1906, and March 1, 1907, the so-called Clapp Amendments were passed. They are respectively 34 Stat. 325, 353, and 34 Stat. 1015, 1034. These amendments gave adult mixed-blood Indians title in fee to their allotted lands, with power to sell and convey the same. Tibbetts died during the year, 1907. Thereafter Rock G. Tibbetts, the father of said deceased, by warranty deed, conveyed the lands here in question, and by successive conveyances thereunder the plaintiff claims title. The estate of Harry Tibbetts was probated in Cass county, Minn., in which county he died, and in that proceeding the said Rock G. Tibbetts was held to be his sole heir. Plaintiff's rights in the land, if any, were acquired in the year 1914. In the year 1920, and without notice to plaintiff, the Land Department of the United States in form canceled the patent to Harry Tibbetts, which cancellation, if valid, would annul plaintiff's claim to the land. After such attempted cancellation, various of the defendants and interveners have made application to have said land allotted to them.

Under the authority of Act June 30, 1913 (38 Stat. 77, 88), the Enrollment Act, it was duly determined and is a matter of record that Harry Tibbetts was a mixed-blood Chippewa Indian, that he died on October 7, 1907, and that he was 21 years of age at the time of his death. Upon these points, this record is conclusive. Aside from the language of the statute, there are persuasive practical reasons why this formal document, prepared with great care, should be final. The law and the enrollment covered allottees on the White Earth Reservation. Harry Tibbetts was such an allottee.

This is not the case of a mixed-blood protesting against his accepting the benefits of the Clapp Amendments, which, being greatly in his favor, would presumably be accepted by him. It is the case of the government passing the Clapp Amendments, and then proceeding arbitrarily to ignore their existence and cancel the trust patent, as though no such acts were on the books, and wholly irrespective of what the attitude of the mixed blood may have been. It is like saying in one breath, "We have emancipated you," and in the next, "We have not." This cannot be done.

In 1920, therefore, the United States was not holding the title to these lands in trust. Baker v. McCarthy, 145 Minn. 167, 176 N. W. 643; United States v. Waller, 243 U. S. 452, 37 S. Ct. 430, 61 L. Ed. 843. Under such circumstances, Act April 23, 1904 (33 Stat. 297), giving the right of cancellation to the Secretary of the Interior, does not apply.

[2] Even if the original allotment and the trust deed were induced through fraud, the equity of a bona fide purchaser thereunder would be superior to the rights of the government. U. S. v. Debell, 227 F. 760, 763, 142 C. C. A. 284. Plaintiff was and is a bona fide purchaser of the land in question.

[3] There could be no cancellation without notice to the person actually interested and opportunity for a hearing in reference to the action proposed. Any other course would be

without due process of law. So are all the authorities. Garfield, Sec'y., v. U. S. ex rel. Goldsby, 211 U. S. 249, 29 S. Ct. 62, 53 L. Ed. 168.

[4] The validity of the attempted cancellation may properly be litigated in this action. The application on behalf of Harry Tibbetts for the lands in question took precedence of all other applications made therefor.

A decree should be entered in favor of plaintiff in accordance with this opinion.